**20 Pages**

PAUL J. PASCUZZI, State Bar No. 148810
HOLLY A. ESTIOKO, State Bar No. 242392
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA  95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
ppascuzzi@ffwplaw.com
hestioko@ffwplaw.com

Attorneys for Georgene Gassner

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>THOMAS A. GASSNER,<br><br>　　　　　Debtor. | CASE NO.  10-27435<br>Chapter 7 |
| GEORGENE GASSNER, individually, as surviving spouse of Debtor Thomas Gassner and successor-in-interest, and in her capacity as Successor Trustee for the Thomas Gassner and Georgene Gassner Family Trust,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>CAROL L. GASSNER and ALFRED M. GASSNER, settlors of the THOMAS A. GASSNER TRUST dated December 30, 1992; and LAURA STROMBOM, trustee of the THOMAS A. GASSNER TRUST dated December 30, 1992,<br><br>　　　　　Defendants. | Adversary No. 19-02038<br><br>DCN:  FWP-1<br><br>Date:　　December 12, 2019<br>Time:　　11:00 a.m.<br>Place:　　501 I Street, 6th Floor, Dept. E, Courtroom 33, Sacramento, CA 95814 |

## MOTION FOR PARTIAL SUMMARY JUDGMENT

Georgene Gassner ("Plaintiff"), Plaintiff in the above-titled adversary proceeding, hereby submits this Motion for Partial Summary Judgment ("Motion") as to Count One [*Sanctions for Willful Violation of the Automatic Stay against Defendant Settlors*], Count Two [*Sanctions for*

*Willful Violation of the Automatic Stay against Defendant Strombom*], Count Four [*Declaratory Relief against Defendant Settlors*], Count Five [*Injunctive Relief against Defendant Settlors*], and Count Six [*Sanctions for Violation of the Discharge Injunction against Defendant Settlors*] of her Adversary Complaint.[1] In support of this Motion, Plaintiff relies on the Memorandum of Points and Authorities filed concurrently herewith ("Memorandum"), the declarations of Georgene Gassner ("Plaintiff Decl."), Russell Cunningham ("Cunningham Decl."), and Dan McDaniel ("McDaniel Decl."), the Exhibits filed herewith, the Statement of Undisputed Facts, the papers and pleadings on file in this adversary proceeding, and such other evidence and argument as may be submitted before or during the hearing on the Motion.

## I. RELIEF REQUESTED

By this Motion, pursuant to Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7056 and Federal Rule of Civil Procedure ("Federal Rule") 56, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff as to Count One [*Sanctions for Willful Violation of the Automatic Stay against Defendant Settlors*], Count Two [*Sanctions for Willful Violation of the Automatic Stay against Defendant Strombom*], Count Four [*Declaratory Relief against Defendant Settlors*], Count Five [*Injunctive Relief against Defendant Settlors*], and Count Six [*Sanctions for Violation of the Discharge Injunction against Defendant Settlors*]. Plaintiff requests that the Court find that the Plaintiff is entitled to actual damages, including costs and attorneys' fees, as well as punitive damages, with damages to be determined at trial. In the alternative, in the event the Court does not grant all the relief requested by this Motion, Plaintiff requests an order of the Court establishing the facts that are not genuinely in dispute and treating them as established in this Adversary Proceeding.

## II. INTRODUCTION

Plaintiff seeks an order granting summary judgment as to her claims for violation of the automatic stay, related declaratory and injunctive relief, and for violation of the discharge

---

[1] The First Amended Complaint. Plaintiff notes that the Court has permitted Plaintiff to file a Second Amended Adversary Complaint for the purpose of including facts regarding the Plaintiff's recent Settlement Agreement with the Bankruptcy Trustee. Plaintiff will be filing that Second Amended Complaint shortly; that amendment will not alter the substance of the Counts in the complaint.

injunction. The Settlors and Strombom, with full knowledge of the Debtor's earlier Bankruptcy Case and knowledge that the Debtor's interest in the Trust Assets had not been disclosed in that case and were part of the bankruptcy estate, attempted to sell the Trust Assets (which were still property of the estate) at an aggressively reduced price to an entity owned and controlled by the Settlors' other children. After the Debtor objected to this sale, the Settlors filed a Petition for Modification of the Trust in state court, seeking to seeking to strip the Debtor (and therefore his bankruptcy estate) of his interest in the Trust Assets entirely, to suspend distribution of the Trust Assets to the Debtor, and/or to compel the already-rejected sale of the Trust Assets. The attempted sale of the Trust Assets and the filing of the Petition for Modification were violations of the automatic stay because they were acts to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. In addition, the filing of the Petition for Modification was a violation of the automatic stay because it was the commencement of an action or other proceeding against the Debtor that could have been commenced before the commencement of the Debtor's Bankruptcy Case.

Although the Debtor reopened his bankruptcy case in February 2017 to disclose his interest in the Trust, and despite the bankruptcy trustee's numerous demands, the Settlors and Strombom have refused to turn over the Trust Assets (or their reasonable value)—and have refused to dismiss the Petition for Modification—for more than 2 ½ years. The continued knowing retention of the Trust Assets and continuation of the State Court Action are continuing violations of the automatic stay.

In addition, despite the filing of a Notice of Stay of Proceedings in the State Court Action, the Settlors propounded discovery requests on Plaintiff in the State Court Action in violation of the automatic stay.

Actions taken in violation of the automatic stay are void, therefore, the State Court Action should be declared void, and the Settlors should be enjoined to dismiss the State Court Action.

In addition, to the extent the Petition for Modification was based upon pre-petition actions or obligations of the Debtor, or pre-petition claims against the Debtor, the filing of the Petition for Modification was a violation of the discharge injunction in that it was the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset a

discharged debt as a personal liability of the Debtor.

There is no genuine dispute as to any of the material facts herein, and the Plaintiff is entitled to judgment as a matter of law. The Plaintiff seeks actual damages, including costs and attorneys' fees, as well as punitive damages, in amounts to be determined at trial.

### III.    JURISDICTION AND VENUE

The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 1334 and 157. Venue is proper pursuant to 28 U.S.C. § 1409. This Motion is brought pursuant to Bankruptcy Rule 7056 (incorporating Federal Rule 56), 11 U.S.C. §§ 105(a), 362(a)(1), 362(a)(3), 362(c)(1), 362(k)(1), 524(a), 541(a), & 554(d), and 28 U.S.C. §§ 2201 & 2202.

### IV.    FACTUAL AND LEGAL GROUNDS

**A. Creation of Thomas A. Gassner Trust.**

1. On or about December 30, 1992, Settlors created the irrevocable Thomas A. Gassner Trust Agreement ("Trust"). The Debtor Thomas A. Gassner ("Debtor") was the sole beneficiary of the Trust. Plaintiff Decl. at ¶ 3; see Exhibit A- Trust at p.1 and at § 2.1 [Dkt. No. 30 in Adversary Proceeding, Adv. No. 19-02006)].

2. The Trust assets ("Trust Assets") included "2,000 shares of the common stock—Class B Non-Voting—of MEPCO LABEL SYSTEMS, a California Corporation" ("Trust Assets"). Trust at p. 1.

3. The Trust provided that, "When Thomas attains age fifty (50), the trust shall terminate and all of the assets shall be distributed to him outright and free of trust." *Id*. at § 3.2.

4. The Debtor began working full-time at MEPCO, the family business, in 1988. The Debtor continued to work at MEPCO for another 22 years through June 2010, including serving as MEPCO's President. Plaintiff Decl. at ¶ 4.

5. The Trust did <u>not</u> provide that the Debtor must continue as an employee of MEPCO in order to receive the distribution of the Trust Assets when he turned 50 years old. See Trust generally.

**B. Debtor's Interest in Trust Became Property of the Estate Upon the Filing of Chapter 7 Bankruptcy Case; Remained Property of the Estate Upon Case Closing.**

6. On March 25, 2010, the Debtor filed a voluntary chapter 7 bankruptcy petition in the United

States Bankruptcy Court for the Eastern District of California, Case No. 10-27435 ("Bankruptcy Case").  See Exhibit C- Petition and Schedules [Dkt. No. 1 in Bankruptcy Case].

7. The Debtor did not list his interest in the Trust or Trust Assets in his original bankruptcy schedules. *Id.* at Schedule B.

8. On June 3, 2010, the chapter 7 trustee filed his Notice of Filing Report of No Distribution. See Exhibit D- Notice [Dkt. No. 13 in Bankruptcy Case].

9. On July 12, 2010, the Debtor received his discharge.  See Exhibit E- Order Discharging Debtor [Dkt. No. 31 in Bankruptcy Case].

10. On May 11, 2011, the Court entered a Final Decree and order closing the Bankruptcy Case. See Exhibit F- Final Decree [Dkt. No. 57 in Bankruptcy Case].

11. The Debtor's interest in the Trust became property of the estate upon the filing of his Bankruptcy Case pursuant to 11 U.S.C. § 541(a).

12. Because the Debtor's interest in the Trust was never scheduled, administered, or abandoned back to the Debtor when the Debtor's no-asset bankruptcy case was originally closed, that interest remained property of the estate subject to the automatic stay pursuant to 11 U.S.C. §§ 554(d) and 362(c)(1).

13. The Debtor left his employment at MEPCO in June of 2010.  Plaintiff Decl. at ¶ 5.

14. Defendant Carol Gassner became aware of the Debtor's bankruptcy filing in the summer of 2010.  Cunningham Decl. at ¶ 4 regarding 2004 Examination; See Exhibit G- Transcript of 2004 Examination of Carol Gassner at p.43 lines 11-18.

15. Defendant Alfred Gassner became aware of the Debtor's bankruptcy filing "probably a year or so" after the Debtor left MEPCO in 2010.  Cunningham Decl. at ¶ 4 regarding 2004 Examination; See Exhibit H- Transcript of 2004 Examination of Alfred "Fred" Gassner at p. 27 line 19 - p.28 line 12.

**C. Violation of Automatic Stay Through Attempted Sale of Trust Assets.**

16. Defendant Strombom was the accountant for MEPCO at all relevant times.  See Exhibit I- Defendant Laura Strombom's Answer to First Amended Adversary Complaint ("Strombom Answer") at ¶ 6 [Dkt. No. 27 in this Adversary Proceeding].

17. On January 26, 2016, Strombom was appointed as trustee of the Trust. *Id.* at ¶ 31; McDaniel Decl. at ¶ 4; see Exhibit J- Notice of Acceptance of Laura Strombom as Successor Trustee of the Thomas A. Gassner Trust dated December 30, 1992 ("Notice of Acceptance").

18. Settlors' attorney, Scott G. Beattie, was listed as the Notary Public on the Acknowledgment for Strombom's Notice of Acceptance. See Notice of Acceptance.

19. The day after her appointment, Strombom executed and sent a Trustee's Notice of Proposed Action to the Debtor ("Notice of Proposed Action"), in which she indicated her intention to sell the Trust Assets at an aggressively reduced price to an entity that was owned by the Settlors' other children, Jennifer Gassner Tracy ("Jennifer") and Alfred Karl Gassner ("Karl"), called Mis Pasadena Properties, LLC ("Mis Pasadena"). See Exhibit K- Trustee's Notice of Proposed Action at ¶ 3.a (an exhibit to the Petition for Modification); see Exhibit L- Unofficial Certificate of Good Standing for Mis Pasadena (RJN).

20. Scott G. Beattie, Esq. was listed as the legal counsel for Strombom on the Notice of Proposed Action. See Notice of Proposed Action at ¶ 1.

21. Scott G. Beattie was listed as the attorney to contact for additional information concerning the Notice of Proposed Action. *Id.* at ¶ 2.

22. The Debtor's consent or objection to the Notice of Proposed Action was to be returned to Scott G. Beattie, Esq. See Beneficiary's Consent or Objection attached to Notice of Proposed Action.

23. Strombom also executed an Agreement to Purchase and Sell Shares of Stock of MEPCO Label Systems ("Purchase Agreement") with Mis Pasadena, with a stated effective date of both January 1, 2016 and January 27, 2016. See Exhibit M- Purchase Agreement [Dkt. No. 40 in Adv. No. 19-02006].

24. Scott G. Beattie prepared the Purchase Agreement, and all exhibits and associated documents thereto. Purchase Agreement at ¶ 27.

25. Scott G. Beattie's law firm, Beattie & Aghazarian LLP, was to be the Escrow Holder in connection with the Purchase Agreement. Purchase Agreement at ¶ 20.

26. An appraisal of MEPCO as of December 15, 2015 ("Appraisal") was attached to the Notice

of Proposed Action. The appraisal was completed at Scott G. Beattie's request. See Exhibit N- Appraisal, Letter from John E. Johnson to Scott G. Beattie dated December 21, 2015 (an exhibit to the Petition for Modification).

27. The Appraisal heavily discounted the value of the Debtor's interest in the Trust Assets, imposing a 55% discount on the value of the 2,000 shares (30% for lack of marketability and an additional 25% for lack of control). Appraisal at pp. 16 & 17.

28. In response to discovery requests propounded in the State Court Action (discussed below), Strombom produced a Privilege Log indicating that she was withholding certain e-mail correspondence with Scott G. Beattie from July of 2016 due to "Attorney/Client Communication." McDaniel Decl. at ¶ 5; See Exhibit O- Privilege Log of Laura Strombom.

29. Strombom is imputed with the knowledge of her attorney Scott G. Beattie with respect to all matters involving the Trust, the Trust Assets, the Debtor's Bankruptcy Case, the attempted sale of Trust Assets, and the Petition for Modification (discussed below). *Redman v. Walters*, 88 Cal. App. 3d 448, 454 (1979) (knowledge of agent is considered and imputed as the knowledge of the principal when the former acquires it in the course of his agency); *Rosenthal v. Garner*, 142 Cal.App.3d 891, 896 (1983) (knowledge acquired prior to the employment or in prior transactions may be imputed, if it is shown that, because of the close connection of the transactions, such knowledge was present in the mind of the agent [attorney] at the time he acted for the principal [client]).

30. The Debtor objected to the sale of the shares as proposed in the Notice of Proposed Action. Plaintiff Decl. at ¶ 6; see Exhibit P- E-mail from Debtor's then-attorney Jeremy Ofseyer to Scott Beattie dated April 14, 2016.

31. As noted above in paragraphs 14 &15, the Settlors had knowledge of the Debtor's Bankruptcy Case, and knowledge that the Debtor had not disclosed his interest in the Trust Assets in his Bankruptcy Case, when they attempted to sell the Trust Assets.

32. The attempt to sell the Trust Assets in January 2016 pursuant to the Notice of Proposed Action was an act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate in violation of 11 U.S.C. § 362(a)(3).

D. **Violation of the Automatic Stay Through Attempted Stripping of Trust Assets Through Petition for Modification in State Court Action.**

33. The Debtor turned 50 years old on July 2, 2016, at which point he was entitled to a distribution of the Trust Assets under the plain terms of the Trust. Plaintiff Decl. at ¶ 7; Trust at § 3.2.

34. Approximately one month prior to the Debtor turning 50, on or about June 7, 2016, the Settlors filed a *Petition for Order for Modification of the Thomas Gassner Trust Due to Changed Circumstances; for Instructions to Suspend Distribution Pending Hearing; and for Instructions Approving Trustee's Proposed Action re Sale of Trust Property* ("Petition for Modification") in the Superior Court of California for the County of San Joaquin, Case No. STK-PR-TR-2016-595 ("State Court Action"). See Exhibit B- Petition for Modification [Dkt. No. 30 in Adv. No. 19-02006)].

35. Through the Petition for Modification, the Settlors sought to strip the Debtor of his interest in the Trust Assets entirely, to suspend distribution of the Trust Assets, or in the alternative, to compel the already-rejected sale of the Trust Assets to Mis Pasadena. Scott G. Beattie prepared and filed the Petition for Modification. Petition for Modification at sections G, H & I.

36. Specifically, the Petition for Modification sought, *inter alia*, a finding that the Settlors' intent was to provide "a conditional gift for Thomas Gassner…subject to the condition that Thomas A. Gassner continue to be employed by MEPCO…until the date of his 50th Birthday (July 2, 2016)," but that the "draftsman" made a "scrivener's error in not providing such a conditional gift clause within the express terms and provisions of the Thomas Gassner Trust." Petition for Modification at p. 26 ¶¶ 1 & 2.

37. The Petition for Modification sought a "proposed modification" of the Trust to insert this conditional language, which would have had the effect of stripping the Debtor of his interest in the Trust Assets, and distributing the Trust Assets to the Settlors' other children, Jennifer and Karl, instead. Petition for Modification at p. 27 ¶ 6, & Exhibit H thereto.

38. The Petition for Modification sought: (1) an order granting the proposed modification; (2) an order determining that the rights of the Debtor in the Trust were terminated; (3) instructions to

the trustee to distribute the Trust Assets to Jennifer and Karl; (4) an order to suspend and delay any distributions pending a final determination in the matter; and (5) in the event the proposed modification was not approved, an order approving the already-rejected sale of the Trust Assets to Mis Pasadena, owned by Jennifer and Karl. Petition for Modification at pp. 27-28 ¶¶ 9-12 & Exhibit H thereto.

39. As noted above in paragraphs 14 & 15, the Settlors had knowledge of the Debtor's Bankruptcy Case, and knowledge that the Debtor had not disclosed his interest in the Trust Assets in the Bankruptcy Case, when they filed their Petition for Modification. The Settlors made several references to the Bankruptcy Case in their Petition for Modification and attached the Debtor's Schedules A, B, and C to the Petition. Petition for Modification at pp.4-5 ¶ 8, pp. 13-14 ¶ 37, pp. 21-22 ¶¶ 56-59, p. 27 ¶7 & Exhibit E attached thereto.

40. In their Memorandum of Points and Authorities in support of their Petition for Modification ("Memorandum"), the Settlors even stated that "**Petitioners are concerned** as newly-informed creditors of his 2010 Bankruptcy matter **that the shares of the stock will now, in some portion, become an asset of Thomas Gassner's prior Chapter 7 Bankruptcy Matter because he failed to disclose the asset at the time of the filing.**" See Exhibit Q- Memorandum at p.5 ¶ 12 (emphasis added) [Dkt. No 30 in Adv. Proc. 19-02006].

41. Notwithstanding this knowledge, the Settlors attempted, through the Petition for Modification, to strip the Debtor (and his bankruptcy estate) of his/its interest in the Trust Assets.

42. The filing of the Petition for Modification was an act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate in violation of 11 U.S.C. § 362(a)(3).

43. The filing of the Petition for Modification was the commencement of an action or other proceeding against the Debtor that could have been commenced before the commencement of the Bankruptcy Case in violation of 11 U.S.C. § 362(a)(1). At any time before the filing of the Debtor's bankruptcy petition, between December 30, 1992 and March 24, 2010 (a period of approximately 17 years), the Settlors could have filed a petition to modify the Trust to reflect their so-called "true intent" with respect to the Trust Assets if they believed there had been a "scrivener's error."

MOTION FOR PARTIAL SUMMARY JUDGMENT

44. The Debtor and Plaintiff hired counsel and opposed the Petition for Modification. Community funds of the Debtor and the Plaintiff were used to pay legal fees and costs associated with opposing the Petition for Modification. Plaintiff Decl. at ¶ 8.

45. Strombom participated in the Settlors' attempt to deprive the Debtor of the Trust Assets through the Petition for Modification, as the Petition for Modification included as an exhibit the Notice of Proposed Action, and requested the sale as alternative relief. Strombom also did not distribute the Trust Assets to the Debtor when the Debtor turned 50 years old on July 2, 2016.

46. On or about July, 26, 2016, counsel for the Debtor and Plaintiff sent a letter to Strombom, demanding the transfer of the Trust Assets to the Debtor on August 1, 2016. Strombom did not transfer the Trust Assets to the Debtor. McDaniel Decl. at ¶ 6; see Exhibit R- Demand Letter from McDaniel.

47. On or about October 5, 2016, the State Court entered an order suspending distribution of the Trust Assets ("Order Suspending Distribution") pending resolution of the Petition for Modification. McDaniel Decl. at ¶ 7; See Exhibit S- Order Suspending Distribution.

48. Neither the Settlors nor Strombom have taken any actions subsequent to that order, such as seeking relief from the Suspension Order to turn over the Trust Assets to the bankruptcy trustee Kimberly J. Husted ("Bankruptcy Trustee"), or seeking relief from the automatic stay or other instructions from the Bankruptcy Court. See Dockets of State Court Action and Bankruptcy Case Generally.

### E. Violation of Discharge Injunction Through Pre-Petition Claims Asserted Against Debtor in Petition for Modification.

49. The Petition for Modification alleged certain pre-petition wrongdoing by, or claims against, the Debtor, including the following: "[B]y 2004 Thomas' real estate investment activities had increased and Thomas focused more and more time and attention on his speculative personal real estate investments. As a result of his House Flipping activities, Thomas' work ethic and devotion of time and effort to MEPCO suffered greatly…Thomas unilaterally and of his own accord cut his working hours at MEPCO and began spending more and more time pursuing these House Flipping activities rather than devoting his time and attention as needed to properly manage MEPCO as he had agreed to do." Petition for Modification at p.7 ¶ 16.

MOTION FOR PARTIAL SUMMARY JUDGMENT

50. The Petition for Modification alleged that, "Despite Petitioner's efforts, Thomas' devotion to the Family Business continued to wane. Eventually, at the height of the real estate boom through the crash into 2009, Thomas was devoting half his day or more each business day to his personal House Flipping activities, essentially ignoring his obligations to MEPCO…" Petition for Modification at pp. 7-8 ¶ 19.

51. The Petition for Modification alleged that, "[A]s a direct and proximate result of Thomas's actions, the Company has sustained substantial loss and damages…The exact amount of damages and costs proximately caused by Thomas' actions is presently unknown, but will be determined in accordance with proof." Petition for Modification at p.14 ¶ 38.

52. The Petition for Modification alleged that, "Thomas Gassner did not pay good and valuable consideration for the shares and should not be rewarded for his wrongful behavior." Petition for Modification at p. 11 ¶ 28.

53. The Petition for Modification specifically sought a finding that "Thomas Gassner's actions in unilaterally reducing his hours and then departing from his employment with MEPCO and engaging in other wrongful acts…constituted Changed Circumstances…sufficient to justify a modification of the terms of the Thomas A. Gassner Trust…," and sought a finding that the Settlors' intent was to provide a "conditional gift" to the Debtor "subject to the condition that Thomas A. Gassner continued to be employed by MEPCO Label Systems as a full time employee in good standing until the date of his 50th Birthday…" Petition for Modification at p. 26 ¶¶ 1 & 3.

54. The Settlors and MEPCO filed proofs of claim in the Bankruptcy Case in May 2017. The Settlors' claim was for "Breach of agreement, misrepresentation, unjust enrichment, conversion, and for property had and received." The Settlors attached the Petition for Modification in support of their claim, marked that the claim was subject to a right of setoff, and identified the Trust Assets as the setoff property. See Exhibit S- Proof of Claim No. 3-1 in Bankruptcy Case.

55. MEPCO's claim was for "Breach of fiduciary duties, interference with business/contractual relations, and salary/commissions had and rcvd." MEPCO attached the Trust Petition in support of its claim. See Exhibit T- Proof of Claim No. 4-1 in Bankruptcy Case.

56. To the extent the Petition for Modification was based upon pre-petition actions or

obligations of the Debtor, or pre-petition claims against the Debtor, the filing of the State Court Action was the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset a discharged debt as a personal liability of the Debtor in violation of 11 U.S.C. § 524(a).

**F.  Continuing Violation of Automatic Stay Through Refusal to Turn Over Trust Assets to Bankruptcy Trustee and Refusal to Dismiss Petition for Modification After Reopening of Bankruptcy Case.**

57. In the course of discussions between the parties regarding the Petition for Modification, the subject of the earlier Bankruptcy Case was raised.

58. The Debtor and Plaintiff hired separate bankruptcy counsel to deal with the bankruptcy-related issues.  Plaintiff Decl. at ¶ 9.

59. On or about February 1, 2017, the Debtor filed an Application to Reopen his Bankruptcy Case, which Application was granted and the case was reopened on February 2, 2017.  See Exhibits U & V, Application and Order [Dkt. Nos. 59 & 60 in Bankruptcy Case].

60. The Debtor thereafter amended his Schedule B to include his interest in the Trust Assets. See Exhibit W- Amended Schedule B & C [Dkt. No. 68 in Bankruptcy Case].

61. The Debtor also amended his Schedule C—"Property Claimed as Exempt"—to include his interest in the Trust Assets.  *Id.*

62. The Debtor and Plaintiff intended that the Trust Assets would be brought into the Bankruptcy Case and administered for the benefit of Debtor's creditors, and that any surplus would be returned to the Debtor pursuant to the relevant provisions of the Bankruptcy Code.  Plaintiff Decl. at ¶ 10.

63. The Debtor and Plaintiff believed that the Bankruptcy Case would be a surplus asset case, as the value of the Trust Assets was expected to exceed the total amount of the claims filed in the case. Plaintiff Decl. at ¶ 11.

64. Neither Strombom nor the Settlors turned over the Trust Assets (or their value) to the Bankruptcy Trustee Kimberly J. Husted ("Bankruptcy Trustee"), when the case was reopened. Plaintiff Decl. at ¶ 12.

**G.  Creation of Thomas and Georgene Gassner Family Trust and Death of Debtor.**

MOTION FOR PARTIAL SUMMARY JUDGMENT

65. In approximately August of 2017, the Debtor underwent surgery and began treatments for an aggressive form of cancer. Plaintiff Decl. at ¶ 13.

66. Due to this serious health condition, the Debtor's and Plaintiff's desire to have the Trust Assets administered and related issues resolved in the Bankruptcy Case intensified, in that the Debtor and Plaintiff faced an urgent need to get their financial affairs in order. Plaintiff Decl. at ¶ 14.

67. Despite the Settlors' (and their counsel, Mr. Beattie's) knowledge of the Debtor's serious health condition, neither Strombom nor the Settlors turned over the Trust Assets (or their reasonable value) to the Bankruptcy Trustee in this Bankruptcy Case during this time. Plaintiff Decl. at ¶ 15.

68. The ongoing bitter dispute with the Settlors and Strombom over the Trust Assets not only created a serious financial strain, but also caused a great deal of worry, uncertainty, frustration, stress, and anxiety for the Debtor and Plaintiff, especially at a time when the Debtor and Plaintiff needed to be free to focus their time and energy on trying to fight the Debtor's cancer and getting their financial affairs in order in case treatments were unsuccessful. Plaintiff Decl. at ¶ 16.

69. The Debtor's treatments ultimately were unsuccessful, and the Debtor passed away on October 5, 2017. Plaintiff Decl. at ¶ 17.

70. Just days before the Debtor passed away, on September 29, 2017, when the Debtor was at his weakest and most vulnerable state, the Settlors sent a "settlement" letter to the Bankruptcy Trustee, offering to settle the issue of the Trust Assets by paying an amount that was just one-third of the appraised value of the shares. The letter required a response by October 20, 2017, just 15 days after the Debtor's death. Plaintiff, who was already dealing with the emotional strain and grief of losing her husband of 27 years, dealing with making his final arrangements, and attempting to comfort their three children, was forced to immediately turn her attention to fighting this bad faith offer. Plaintiff Decl. at ¶ 18; See Exhibit X- Letter from Beattie to Cunningham dated September 29, 2017 [Dkt. No. 30 in Adv. Proc. 19-02006].

71. Prior to his passing away, on or about September 14, 2017, the Debtor and the Plaintiff, as Co-Trustors, created the Thomas and Georgene Gassner Family Trust ("Family Trust"). Plaintiff Decl. at ¶ 19; See ExhibitY- Family Trust.

72. The Debtor's interest in the Trust Assets was included as an asset of the Family Trust. Plaintiff Decl. at ¶ 20; see Family Trust; see Exhibit Z- Assignment to Trust.

73. Upon the passing of the Debtor, the Plaintiff became the Successor Trustee of the Family Trust, and succeeded to the Debtor's assets, claims, and interests. The Plaintiff is also a beneficiary of the Family Trust. Plaintiff Decl. at ¶ 21; Family Trust.

74. To the extent any assets, claims, or interests are not part of the Family Trust, Plaintiff succeeded to those assets, claims, or interests as the surviving spouse of the Debtor. The Debtor's Last Will and Testament ("Will") nominated Plaintiff as the Executor of his Will, and gave all of his property and interests to Plaintiff either individually and/or as Successor Trustee of the Family Trust. Plaintiff Decl. at ¶ 22; see Exhibit AA- Debtor's Last Will and Testament.

**H.  Violation of Stay Through Propounding Request for Production in State Court Action.**

75. On or about April 11, 2017, the Debtor filed a Notice of Stay of Proceedings ("Notice of Stay") in the State Court Action. Plaintiff Decl. at ¶ 23; See Exhibit BB- Notice of Stay.

76. On or about February 16, 2018, and notwithstanding the Notice of Stay, the Settlors served upon Plaintiff a Request for Production of Documents and Tangible Things Propounded on Respondent (Georgene Gassner, Personal Representative of Thomas Gassner, Deceased) Set One ("Request for Production") in the State Court Action. Plaintiff Decl. at ¶ 24; See Exhibit CC- Request for Production.

77. On March 15, 2018, Plaintiff, through her attorney, filed a Response to the Request for Production, objecting to the request on the ground that the State Court Action was stayed, and stating that the request was a violation of the automatic stay under the United States Bankruptcy Code. Plaintiff Decl. at ¶ 25; See Exhibit DD- Response to Request for Production at Prefatory Statement and General Objections.

78. The Response specifically stated that "the asset which is the subject matter of this proceeding remains subject to the bankruptcy proceeding. The asset is property of the bankruptcy estate and subject to the automatic stay of 11 U.S.C. §362(a)(1), (2), (3), (6), and (7) in the matter of In re Thomas A. Gassner, Debtor, Case No. 10-27435-A-7, U.S. Bankruptcy Court, Eastern District of California." See Response to Request for Production at Prefatory Statement and General

Objections.

79. The propounding of the Request for Production was an act in violation of the automatic stay.

### I. Trustee Notifications of Violation of Stay, Demands for Turnover of Trust Assets, and Demands to Dismiss State Court Action.

80. The Bankruptcy Trustee has notified the Settlors and Strombom of their violations of the automatic stay, and has made demands to them for turnover of the Trust Assets (or their value), on numerous occasions. In an e-mail dated May 31, 2018, Bankruptcy Trustee's counsel Luke Hendrix notified Scott Beattie that the Petition for Modification was void ab initio, that the Trust Assets were still property of the estate, and that the filing of the Petition for Modification was a violation of automatic stay. He warned Mr. Beattie that the Bankruptcy Trustee would file an adversary complaint for violation of stay and turnover if the Settlors did not make an offer to purchase or otherwise settle the matter. See Exhibit EE- E-mail Hendrix to Beattie dated May 31, 2018 [Dkt. No. 30 in Adv. No. 19-02006].

81. In an e-mail dated December 28, 2018 to Scott Beattie, Bankruptcy Trustee's counsel Russell Cunningham demanded the turnover of the shares and dismissal of the Petition for Modification. Cunningham Decl. at ¶ 5; see Exhibit FF- E-mail Cunningham to Beattie dated December 28, 2018.

82. In two e-mails dated February 28, 2019 to Scott Beattie, Bankruptcy Trustee's counsel Russell Cunningham again demanded that the Settlors dismiss the Petition for Modification. Cunningham Decl. at ¶ 6; see Exhibit GG- E-mails Cunningham to Beattie dated February 28, 2019.

83. On January 7, 2019, the Bankruptcy Trustee filed her Adversary Complaint against the Settlors, Strombom, and MEPCO for turnover of property of the estate, sanctions for violation of the automatic stay, and for involuntary dissolution of MEPCO. See Exhibit HH- Bankruptcy Trustee's Adversary Complaint [Dkt. No. 151 in Bankruptcy Case].

84. As of the date of the filing of this Motion, neither Strombom nor the Settlors have turned over the Trust Assets to the Bankruptcy Trustee, and the Settlors have not dismissed the State Court Action.

### J. Plaintiff's Standing to Bring Claims

85. On or about September 5, 2019, the Plaintiff and the Bankruptcy Trustee entered into a Settlement Agreement which provided, *inter alia*, for the transfer of all of the Bankruptcy Trustee's rights to seek damages for violation of the automatic stay (and related relief) to Plaintiff. The Bankruptcy Court approved the Settlement Agreement at a hearing held on September 26, 2019, and entered its order on October 1, 2019. Plaintiff Decl. at ¶ 26; See Exhibits II & JJ- Settlement Agreement and Order [Dkt. Nos. 164 & 175 in Bankruptcy Case]. Plaintiff has standing to assert the claims herein due to this transfer of rights.

86. Plaintiff also has standing to assert the claims herein under 11 U.S.C. § 362(k) due to her status as Successor Trustee to, and beneficiary of, the Family Trust, due to her status as the Debtor's successor-in-interest as to his claims, property, and interests under the Will, and due to her status as the surplus recipient in this Bankruptcy Case.

**K. Plaintiff's Damages.**

Damages resulting from the intentional, willful actions of the Settlors and Strombom include, but are not limited to:

(a) Loss of benefit and use of Trust Assets (or their value) since July 2, 2016 (or from such time as the Trust Assets could have been expeditiously administered in Debtor's Bankruptcy Case for the benefit of his creditors following its reopening in February 2017, with the anticipated surplus being returned to the Debtor pursuant to applicable Bankruptcy Code statutes), including interest thereon.

(b) Attorneys' fees and costs associated with opposing the Petition for Modification (including responding to the Request for Production), in bringing Plaintiff's Adversary Proceeding, and in otherwise asserting and protecting Plaintiff's rights with respect to the Trust Assets in the Bankruptcy Case (e.g., opposing bad faith settlement offers from Settlors).

(c) Increased administrative costs of the bankruptcy estate due to the refusal to turn over the Trust Assets or their value in a timely manner following the reopening of the bankruptcy case in February 2017 (including, e.g., the costs of the Bankruptcy Trustee's Adversary Proceeding), ultimately to the detriment of Plaintiff as a surplus recipient.

(d) Increased total amount of the claims against the bankruptcy estate (i.e., interest that has accrued and will continue to accrue on such claims until they are paid) due to the refusal to turnover Trust Assets or their value in a timely manner to the Bankruptcy Trustee, ultimately to the detriment of Plaintiff as surplus recipient.

(e) Emotional distress damages.

(f) Punitive damages.

Damages will be proven at trial.

### V.　　PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT

Pursuant to Rule 56(a), made applicable to this Adversary Proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

There is no genuine dispute as to any material facts, and the facts establish, as a matter of law, that the Plaintiff is entitled to the relief requested in Counts One, Two, Four, Five, and Six of her Complaint. The Court should therefore grant summary judgment in favor of the Plaintiff as to those Counts, and find that the Plaintiff is entitled to actual damages, including costs and attorneys' fees, as well as punitive damages, with damages to be determined at trial. In the alternative, in the event the Court does not grant all the relief requested by this Motion, Plaintiff requests an order of the Court establishing the facts that are not genuinely in dispute and treating them as established in this Adversary Proceeding.

**A. Summary Judgment Should Enter in Favor of Plaintiff on Counts One and Two Because the Defendants' Actions Were (and Continue to Be) Willful Violations of the Automatic Stay.**

Pursuant to Section 541(a) of the Bankruptcy Code, all of the Debtor's legal and equitable interests in property, including his interest in the Trust, became property of his bankruptcy estate upon the filing of his bankruptcy petition. Because the Debtor's interest in the Trust was never disclosed, it was never administered in the case or abandoned back to the Debtor when the Debtor's bankruptcy case was originally closed. As a result, his interest in the Trust and Trust Assets remained property of the estate subject to the automatic stay pursuant to 11 U.S.C. §§ 554(d) and 362(c)(1).

Here, the Settlors admitted to having knowledge of the Debtor's Bankruptcy Case, admitted to knowing that the Debtor's interest in the Trust had not been disclosed in the Bankruptcy Case, and even admitted knowing that the Trust Assets were likely still an asset of the Bankruptcy Case. Nevertheless, despite this knowledge, the Settlors attempted to sell the Trust Assets to an entity owned and controlled by their other children, and later tried to strip the Debtor (and his bankruptcy estate) of the Trust Assets entirely through their Petition for Modification. They did this in conjunction with MEPCO's accountant, Defendant Strombom, who was appointed as the new trustee of the Trust. Strombom has acted as an instrument for the Settlors and has carried out their wishes with respect to the Trust. In addition, Strombom is imputed with the knowledge of her (and the Settlors') attorney with respect to all matters involving the Trust, the Trust Assets, the Debtor's Bankruptcy Case, the attempted sale of Trust Assets, and the Petition for Modification.

The attempted sale and filing of the Petition for Modification were intentional, willful acts to obtain possession of property of the estate and/or to exercise control over property of the estate in violation of 11 U.S.C. § 362(a)(3). The filing of the Petition for Modification was also the commencement of an action or proceeding against the Debtor that could have been commenced before the commencement of the Debtor's bankruptcy case in violation of 11 U.S.C. § 362(a)(1).

In addition, despite the filing of a Notice of Stay, the Settlors propounded a Request for Production on Plaintiff in the State Court Action.

Finally, despite the Bankruptcy Trustee's demands, the Settlors and Strombom have refused to turn over the Trust Assets (or their reasonable value) to the Bankruptcy Trustee, and have refused to dismiss the State Court Action, for more than 2 ½ years since the reopening of the Bankruptcy Case. The Settlors' and Strombom's continued knowing retention of the Trust Assets is an act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate in violation of 11 U.S.C. § 362(a)(3). Thus, the violation of the automatic stay is ongoing. All of the actions of the Settlors and Strombom described above are willful violations of the automatic stay, and summary judgment should be granted as to Counts One and Two.

///

**B. Summary Judgment Should Enter in Favor of Plaintiff on Counts Four and Five for Declaratory and Injunctive Relief as to the State Court Action Because It Was Filed in Violation of the Automatic Stay.**

28 U.S.C. § 2201 provides, "In a case of actual controversy within its jurisdiction…any court of the United States…may declare the rights and other legal relations of any interested party seeking such declaration…" 28 U.S.C. § 2202 provides, "Further necessary or proper relief based on a declaratory judgment or decree may be granted…against any adverse party whose rights have been determined by such judgment." In addition, the Bankruptcy Court has inherent authority to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a).

An actual controversy has arisen and now exists between Plaintiff and Settlors regarding the status of the State Court Action. A judicial determination is necessary and appropriate at this time regarding the status of the State Court Action.

An act taken in violation of the automatic stay is void under Ninth Circuit law. Here, because the Petition for Modification was filed in violation of the automatic stay, that action is void. Accordingly, the Court should grant declaratory relief confirming that the State Court Action is void. In addition, because the State Court Action is void, the Court should enjoin the Settlors to dismiss the State Court Action. Summary judgment should be granted as to Counts Four and Five.

**C. Summary Judgment Should Enter in Favor of Plaintiff on Count Six Because the Filing of the State Court Action Was in Violation of the Discharge Injunction.**

Section 524(a) of the Bankruptcy Code provides that, "A discharge in a case under this title—…(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not such discharge of such debt is waived." A party who knowingly violates the discharge injunction can be held in contempt under 11 U.S.C. § 105(a).

Here, the Settlors knew of the Debtor's Bankruptcy Case, and knew that the Case had been closed years earlier. Nevertheless, in their Petition for Modification, the Settlors referred numerous times to actions taken by the Debtor prior to the filing of his Bankruptcy Case, and relied on them,

MOTION FOR PARTIAL SUMMARY JUDGMENT

at least in part, in seeking the relief requested in the Petition for Modification. The filing of the Petition for Modification by the Settlors was intentional. To the extent the Petition for Modification was based upon pre-petition actions or obligations of the Debtor, or pre-petition claims against the Debtor, the filing of the State Court Action was in violation of the discharge injunction in that it was the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset a discharged debt as a personal liability of the Debtor in violation of 11 U.S.C. § 524(a). Summary judgment should be granted as to Count Six.

## VI.　CONCLUSION

For the reasons set forth above, Plaintff requests an order of the Court granting summary judgment in favor of Plaintiff as to Count One [*Sanctions for Willful Violation of the Automatic Stay against Defendant Settlors*], Count Two [*Sanctions for Willful Violation of the Automatic Stay against Defendant Strombom*], Count Four [*Declaratory Relief against Defendant Settlors*], Count Five [*Injunctive Relief against Defendant Settlors*], and Count Six [*Sanctions for Violation of the Discharge Injunction against Defendant Settlors*]. Plaintiff requests that the Court find that the Plaintiff is entitled to actual damages, including costs and attorneys' fees, as well as punitive damages, with damages to be determined at trial.

Dated: October 31, 2019　　　　　　　　FELDERSTEIN FITZGERALD
　　　　　　　　　　　　　　　　　　　WILLOUGHBY PASCUZZI & RIOS LLP

　　　　　　　　　　　　　　　　　　　*/s/ Holly A. Estioko*
　　　　　　　　　　　　　　　　　　　Holly A. Estioko
　　　　　　　　　　　　　　　　　　　Attorneys for Georgene Gassner