*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re | ) | Case No.  10-27435-E-7 |
| | ) | |
| THOMAS A. GASSNER, | ) | |
| | ) | |
| Debtor. | ) | |
| ———————————————— | ) | |
| | ) | |
| GEORGENE GASSNER, | ) | Adv. Proc. No. 19-2038 |
| | ) | Docket Control No. FWP-1 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CAROL L. GASSNER, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

**This Memorandum Decision is not appropriate for publication.**
**It may be cited for persuasive value on the matters addressed.**

## MEMORANDUM OPINION AND DECISION

Georgene Gassner, the Plaintiff ("Plaintiff-Georgene"), individually and as the successor trustee of the Thomas Gassner and Georgene Gassner Family Trust ("TG & GG Trust"),  has filed a Complaint seeking relief from alleged violations of the automatic stay.  Plaintiff-Georgene is the wife of the late Thomas A Gassner ("Debtor"), the debtor in Chapter 7 bankruptcy case 10-27435 ("Bankruptcy Case").  Plaintiff-Georgene asserts claims for violation of the automatic stay and discharge injunction as the successor in interest to the Debtor and assignee of such claims from the Bankruptcy Estate.

The defendants are Carol L. Gassner and Alfred Gassner, settlors of the Thomas T. Gassner Trust. ("Defendant-Trust Settlors"), and Laura Strombom, trustee of the Thomas A. Gassner Trust ("Defendant-Strombom Trustee").

The general allegations against the various defendants are set forth on pages 2 through 8 of the Amended Complaint ("Complaint"). Dckt. 20. The court summarizes the general allegations as follows (identified by paragraph number of the Complaint):

A.  Plaintiff-Georgene is the surviving spouse of Debtor and is the successor trustee of the TG & GG Trust. These claims asserted in the Complaint are her capacity as trustee and as the surviving spouse of Debtor. ¶ 4.

B.  In December 1992, Defendant-TAG Trust Settlors created a trust for the benefit of the Debtor, the Thomas A. Gassner Trust ("TAG Trust"). The TAG Trust assets include 2,000 shares of MEPCO Label Systems ("MEPCO") stock. ¶ 5, 8, 9.

C.  Under the terms of the TAG Trust, when Debtor reached the age of 50, the TAG Trust terminated and the assets of the TAG Trust, including the 2000 MEPCO shares were to be distributed to Debtor. ¶ 10.

D.  Debtor began working for MEPCO in 1988. Following the creation of the TAG Trust in December 1992, Debtor continued to work for MEPCO for eighteen years after the creation of the TAG Trust in December 1992. ¶ 7, ¶ 11, ¶ 12.

E.  On March 25, 2010, Debtor commenced a voluntary Chapter 7 bankruptcy case, No. 10-27435 ("Bankruptcy Case"). Debtor did not list his interest in the TAG Trust in his Chapter 7 case. Debtor was granted a discharge on July 12, 2010, and the Bankruptcy Case was closed on May 11, 2011. ¶¶ 13 -17.

F.  Because the interest in the TAG Trust was not disclosed in the Bankruptcy Case, they remained in the bankruptcy estate in Debtor's Bankruptcy Case ("Bankruptcy Estate"), protected by the automatic stay pursuant to 11 U.S.C. § 362(c)(1) as property of the Bankruptcy Estate. ¶ 18.

G.  Debtor left his employment at MEPCO in June 2010. Debtor's and Plaintiff-Georgene (who also worked at MEPCO and also left in June 2010) relationship with Defendant-Trust Settlors had grown acrimonious prior to leaving and became more acrimonious after leaving. ¶¶ 19, 20.

H.  Debtor turned 50 years old on July 2, 2016, the age at which the TAG Trust was to terminate and the assets of the TAG Trust, including the 2,000 MEPCO shares distributed to Debtor. ¶ 21.

I.  Approximately one month before Debtor turned 50 years old, on June 7, 2016, Defendant-Trust Settlors filed a Petition ("State Court Petition") for Modification of the TAG Trust in the California Superior Court ("State Court Petition Action"). The State Court Petition sought to "strip" Debtor of his interest in the TAG Trust, suspend distribution of the TAG Trust assets to Debtor, and authorize the sale of the TAG Trust Asset, the MEPCO Stock, to an entity controlled by Defendant-Trust Settlors and/or Defendant-Trust Settlors' daughter, Debtor's sister. ¶ 22.

///

2

J.    The State Court Petition was filed by Defendant-Trust Settlors' attorney Scott G. Beattie, who is also Defendant-Trust Settlors' attorney in this and related adversary proceedings and the Bankruptcy Case. *Id.*

K.    It is alleged in the State Court Petition that Debtor focused more and more of his time and attention on "speculative personal real estate investments," and Debtor's "work ethic and devotion of time and effort to MEPCO suffered greatly. . . ." Further, that Debtor "unilaterally and of his own accord" cut his MEPCO work hours to spend his time on the real estate investments rather than properly managing MEPCO as "he had agreed to do." ¶ 23.

L.    It is further alleged in the State Court Petition that at he height of the real estate boom through the economic crash in 2009, Debtor was spending half his day or more on his "personal House Flipping activities, essentially ignoring his obligations to MEPCO...." ¶ 24.  In is alleged in the Trust Petition that these activities of Debtor have resulted in damages to MEPCO for which recovery is sought through the State Court Petition Action. ¶¶ 25.

M.    The State Court Petition asserts that Debtor's actions through 2009 are valid bases for determining that changed circumstances exist to modify the terms of the TAG Trust Agreement, that there should be a determination that the gift of the MEPCO shares was a conditional gift, with the condition being that Debtor continue to be employed in good standing by MEPCO until Debtor's 50th birthday. ¶ 27.

N.    Defendant-Strombom Trustee participated in Defendant-Trust Settlors' efforts to deprive Debtor of his interest in the TAG Trust, proposing as trustee of the TAG Trust to sell the 2,000 MEPCO shares to Defendant-Trust Settlors' daughter. Defendant Strombom Trustee was appointed as trustee of the TAG Trust one day prior to issuing the 2016 Notice of Proposed Action to sell the 2,000 MEPCO shares to the Defendant-Trust Settlors' daughter. ¶¶ 29-30.

O.    Defendant-Strombom Trustee was appointed Trustee one day prior to issuing the Notice of Proposed Action. ¶ 31.

P.    Attorney Scott G. Beattie, the Defendant-Trust Settlors' attorney in the State Court Petition Action and the related adversary proceedings and bankruptcy case, served as the Notary Public for Defendant-Strombom Trustee's Notice of Proposed Action. *Id.*

Q.    Attorney Scott G. Beattie, is also identified as the attorney for Defendant-Strombom Trustee on the Notice of Proposed Action. ¶ 32.  The State Court Petition was served by Scott G. Beattie on Defendant-Strombom Trustee and she was aware of the actions being taken with respect to the property of the TAG Trust in the State Court Petition Action. ¶¶ 33-34.

R.    The commencement and prosecution of the State Court Petition Action were attempts to obtain possession of or exercise control over property of the Bankruptcy Estate - the Debtor's interest in the TAG Trust.  The State Court Petition Action relates to pre-Bankruptcy Case filing claims and rights.  ¶ 35-36.

S.    The Defendant-Trust Settlors and Defendant-Strombom Trustee were aware of the Bankruptcy Case and the automatic stay before filing the State Court Petition.  The State Court Petition specifically identifies the interest in the TAG Trust no being disclosed on the bankruptcy schedule filed by Debtor and asserted that such failure would work as a fraud on Debtor's creditors in the Bankruptcy Case.  ¶¶ 38-39.

T. The filing of the State Court Petition and prosecution of the State Court Petition Action were acts to obtain possession of or to control property of the Bankruptcy Estate. ¶ 37.

U. Defendant-Strombom Trustee did not distribute the TAG Trust assets to Debtor when he turned 50 years old on July 2, 2016. On July 26, 2016, the attorney for Debtor and Plaintiff-Georgene made written demand for the distribution of the TAG Trust assets, but Defendant-Strombom Trustee did not distribute the assets as demanded. ¶¶ 41-42.

V. On October 5, 2016, the State Court issued an order suspending distribution of the TAG Trust assets. ¶ 43.

W. Defendant-Strombom Trustee did not take any action to fulfill her fiduciary duty to the Debtor, and now Plaintiff-Georgene as successor, as the beneficiary of the TAG Trust. Defendant-Strombom Trustee did not turn over to Kimberly Husted ("Bankruptcy Trustee"), the Chapter 7 trustee in the Bankruptcy Case, the TAG Trust assets that were property of the Bankruptcy Estate. ¶ 44.

X. On or about February 1, 2017, Debtor reopened his Bankruptcy Case and filed amended Schedule B listing his interest in the TAG Trust. ¶ 49-50.

Y. On or about April 11, 2017, Debtor filed a Notice of Stay in the State Court Petition Action, which was served on the Defendant-Trust Settlors and Scott G. Beattie. ¶ 54.

Z. Defendant-Trust Settlors and Defendant-MEPCO have each filed proofs of claim in the Bankruptcy Case, asserting a right to set off the damages from such claims against Debtor's interest in the TAG Trust. ¶ 56. To the extent these are for pre-petition claims, such attempted enforcement of such obligations is a violation of the Debtor's discharge. ¶ 58.

AA. In August 2017, Debtor underwent surgery and other treatment for a serious health condition. Due to this serious health condition, Debtor and Plaintiff-Georgene needed to address these asset issues.     ¶¶ 59-60.

BB. Defendant-Strombom Trustee did not turn over to the Bankruptcy Trustee those TAG Trust assets that were property of the Bankruptcy Estate. Defendant-Trust Settlors did not have the stay of distribution modified or address the effect on the property of the Bankruptcy Estate. ¶ 61.

CC. Debtor passed away on October 5, 2017. The Debtor's interest in the TAG Trust assets, and his other claims, rights, and interests are property of the TG & GG Trust, for which Plaintiff-Georgene is the trustee.     ¶ 62-55.

DD. Notwithstanding Notice of the Automatic Stay that was filed in the State Court Petition Action, the Defendant-Trust Settlors served on Plaintiff-Georgene a request for production of documents. Plaintiff-Georgene, through her attorney, filed a response objecting to the request, asserting that it violated the automatic stay. The response also expressly stated that the TAG Trust assets were property of the Bankruptcy Estate. ¶¶ 66-68.

EE. In May 2018, counsel for the Bankruptcy Trustee also communicated to Scott G. Beattie, as counsel for the Defendant-Trust Settlors, that the failure to turn over property of the Bankruptcy Estate was a violation of the automatic stay. ¶ 69.

4

FF.    On or about December 28, 2018 and February 28, 2019, counsel for the Bankruptcy Trustee notified Scott G. Beattie, as counsel for Defendant-Trust Settlors, that: (1) the TAG Trust assets were property of the Bankruptcy Estate; (2) that the State Court Petition Action was a violation of the automatic stay, and (3) demanded that Defendant-Trust Settlors dismiss the State Court Petition Action.  ¶¶ 70-71.

GG.    Neither Defendant-Strombom Trustee nor the Defendant-Trust Settlors have taken any action for the TAG Trust assets that are property of the Bankruptcy Estate to have said assets turned over to the Bankruptcy Trustee.  ¶ 72.

HH.    Defendant-Strombom has not disbursed any TAG Trust assets to the Debtor.  ¶ 73.

The claims are identified in Counts One, Two, Three, Four, and Five of the Complaint. These counts are summarized by the court as follows:

**Count One**

Count One seeks relief for alleged violations of the automatic stay against the Defendant-Settlors for filing of the State Court Petition Action to exercise control over and try to obtain possession of property of the Bankruptcy Estate.  That such action was taken with actual knowledge of the Bankruptcy Case and the automatic stay.  Further, that Defendant-Settlors have continued in their violation of the automatic stay notwithstanding the demands of the Bankruptcy Trustee to have the State Court Petition Action dismissed.

**Count Two**

Count Two seeks relief for alleged violations of the automatic stay against Defendant-Strombom Trustee.  It is asserted that Defendant-Strombom and the Defendant-Trust Settlors have "shared" the same attorney, Scott G. Beattie, when the State Court Petition Action was commenced, and that Defendant-Strombom Trustee participated in Defendant-Trust Settlors' actions to deprive the Debtor and the Bankruptcy Estate of the TAG Trust assets.  Further, that Defendant-Strombom Trustee had actual knowledge of the Bankruptcy Case and the automatic stay, and that Defendant-Strombom was acting to obtain possession of or control property of the Bankruptcy Estate.  These actions by Defendant-Strombom were willful and intentional.

**Count Three**

In Count Three, Plaintiff-Georgene asserts that the failure of Defendant-Strombom Trustee to distribute the TAG Trust assets, the 2,000 shares of MEPCO stock, when Debtor turned 50 years of age in 2016 was a breach of Defendant-Strombom Trustee's fiduciary duty to Debtor, and then

5

to Plaintiff-Georgene as the successor in interest upon the death of the Debtor, as the beneficiary of the TAG Trust.

### **Count Four**

Count Four of the Complaint seeks declaratory relief against Defendant-Strombom Trustee and the Defendant-Trust Settlors for violation of the automatic stay by filing the State Court Petition Action. Therefore, Plaintiff-Georgene seeks an order "declaring" that the State Court Petition Action is void. [1]

### **Count Five**

Count Five seeks injunctive relief, with this court ordering the Defendant-Trust Settlors to dismiss the State Court Petition Action.

### **Count Six**

Count Six seeks the recovery of damages for Defendant-Settlors for violation of the discharge injunction arising from the Debtor's discharge to the extent that the State Court Petition Action was based on pre-petition actions or obligations of Debtor.

### **REVIEW OF MOTION FOR SUMMARY JUDGMENT**

The Motion for Summary Judgment seeks partial summary judgment for Counts One, Two, Four, Five, and Six.

The foundation of the Motion is build on the creation of the TAG Trust on or about December 30, 1992. Debtor is the sole beneficiary of the TAG Trust. Exhibit A, Trust Agreement ¶ 2.1; Dckt. 41. The corpus of the TAG Trust is 2,000 shares of MEPCO stock.

Some of the relevant portions of the TAG Trust Agreement about the TAG Trust, the

---

[1] Count Four clearly requests relief from the court that the State Court Petition Action is void. Such a determination is not merely "declaratory relief of what would happen in the event of future acts by the parties," but a judgment that the State Court Action itself is void. 28 U.S.C. § 2201; *Societe de Conditionnement v. Hunter Eng. Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937); 12 Moore's Federal Practice Civil § 57.04[2], "Stated differently, declaratory judgment relief creates means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached a stage at which either party may seek a coercive remedy or in which a party entitled to a coercive remedy fails to sue. However, declaratory relief is inappropriate to adjudicate past conduct, such as when the damages have already accrued"

beneficial interests of which are the subject of extensive litigation, and the assets includes:[2]

WHEREAS, it is the intention of the **Settlers** to **create an irrevocable trust** for the primary benefit of THOMAS A. GASSNER, which trust shall be known as the THOMAS A. GASSNER TRUST (hereinafter sometimes referred to as the "Trust"); and

WHEREAS, for that purpose, the **Settlers make an absolute and irrevocable gift of two thousand (2,000) shares of** the class "B" non-voting **common stock of MEPCO** LABEL SYSTEMS, A CALIFORNIA CORPORATION.

NOW, THEREFORE, in consideration of the premises and by the Settlers' execution of this Agreement, the Settlers declare and establish the Trust, to be held by the Trustee in trust for the purposes and subject to all the terms, conditions and provisions of this Agreement; by the Trustee's execution of this Agreement, **the Trustee acknowledges receipt from the Settlors of the gift and agree to hold and administer it**, together with any other property of any kind which the Trustee may at any time hereafter receive from the Settlers, for the uses and purposes and **subject to all of the terms, conditions and provisions of this Agreement**.

*Id.* p. 1 (emphasis added).

ARTICLE I
Designation of successor Trustees

The Trustee, or Co-Trustees acting unanimously, of each separate trust, shall have the power to designate successor Trustees or Co-Trustees with respect to such trust while serving as Trustee; provided, however, that neither the Settlers nor any person deemed to be the Settlers shall serve as successor Trustee. In default of such exercise, and in .the event that GEORGE V. HARTMANN fails to qualify or ceases to act as Trustee, then JOHN DEGREGORI shall serve as Trustee.

*Id.*

ARTICLE II
Identity of Beneficiary

2.1    Beneficiaries.    The sole beneficiary of the trust shall be THOMAS A. GASSNER ("Thomas").

*Id.*

ARTICLE III

3.1.    Distributions of Income and Principal. Until Thomas attains age fifty (50), the Trustee is authorized to distribute all the net income to Thomas in monthly

---

[2] This court is also addressing the TAG Trust, TAG Trust Agreement, and what other proceedings are necessary to make a final determination of what the TAG Trust provides, whether a basis exists for reformation of the TAG Trust Agreement and which court such proceedings should be prosecuted, and what the TAG Trust Agreement states in related adversary proceeding *Husted v. MEPCO Label Systems et al*, 19-2006. The findings and determinations concerning the TAG Trust and the beneficiaries thereof will be the same in this and the related adversary proceedings, as well as in contested matters between these parties in the Bankruptcy Case.

or other convenient installments (but in no case less than once each calendar year) together with so much of the principal of the Trust as the Trustee deems to be necessary for Thomas' health, education, support and maintenance.

*Id.*

        3.2     Distribution of Trust. When Thomas attains age fifty (50), the trust shall terminate and all of the assets shall be distributed to him outright and free of trust. In the event Thomas dies prior to attaining age fifty (50), then the trust shall be distributed to Thomas' then living issue, if any, and if none, then to the living issue of Settlors; provided, however, that any Subchapter S stock then held by the Trustee shall be distributed to only one living child of Thomas (or of the Settlors if Thomas is not survived by living issue) and the other children shall be compensated through allocation or equalization by the issuance of appropriate debt instruments.

*Id.*

ARTICLE V
Character of the Trust

        Trust is Irrevocable. This Trust is irrevocable. Neither the Trustee, nor the Settlors, nor any other person shall have the right to revoke, alter or amend this Agreement or any of its terms. The Settlors do hereby renounce, relinquish and disclaim any reversionary or remainder interest in the Trust estate.

*Id.*

Debtor began working at MEPCO in 1988 and continued there for twenty-two years, leaving in June 2010. While the Defendant-Trust Settlors assert that there was an oral understanding that there was an additional condition that Debtor must continue in his employment at MEPCO in addition to reaching the age of 50 years old, no such provision is provided in the TAG Trust Agreement.

It is further asserted that Debtor did not list his interest in the TAG Trust when he filed the 2010 Bankruptcy Case. Even though not listed, Debtor's interest in the TAG Trust became property of the Bankruptcy Estate, 11 U.S.C. § 541(a), and remained in the Bankruptcy Estate notwithstanding Debtor receiving his discharge and the Bankruptcy Case was closed and continued to be protected by the automatic stay, 11 U.S.C. §§ 554(d), 362(c)(1).

Defendant Carol Gassner was aware of Debtor's Bankruptcy Case in the summer of 2010, and Defendant Alfred Gassner was aware of the Debtor's Bankruptcy Case in 2011.

Defendant-Strombom Trustee was the accountant for MEPCO during the periods relevant to the Complaint. On January 26, 2016, Defendant-Strombom Trustee was appointed as trustee of

the TAG Trust.

On January 27, 2016, the day after becoming the trustee of the TAG Trust, Defendant-Strombom Trustee executed and sent her Trustee's Notice of Proposed Action to the Debtor. The Trustee's Notice of Proposed Action includes the following information:

1. **Name and Mailing Address of Trustee and Legal Counsel:**

Name: Laura Strombom, Trustee of the
Thomas A Gassner Trust
[address]

Name: Scott G. Beattie, Esq.
Beattie & Aghazarian, LLP
[address]

2. **Name and Telephone Number of Persons Who May be Contacted for Additional Information:**

Attorney:     Scott G. Beattie, Esq.
[phone number]

Trustee:     Laura Strombom
[phone number]

Exhibit K, Dckt. 42. Plaintiff-Georgene directs the court to Scott G. Beattie, the attorney for Defendant-Trust Settlors, is listed as the attorney for Defendant-Strombom Trustee, the trustee of the TAG Trust.

The Purchase Agreement that Defendant-Strombom Trustee executed was prepared by attorney Scott G. Beattie. A copy of the Purchase Agreement is filed as Exhibit M (Dckt. 42). The Purchase Agreement includes the following:

27. This Agreement and all Exhibits and associated documents have been prepared by Scott G. Beattie, Esq., of the law firm of Beattie & Aghazarian, LLP, to memorialize the verbal discussions of the Parties as related to him, and without representing either party in an adversarial capacity against the other party. Each Party is advised that he/she/it has the right to have this Agreement reviewed by an independent attorney of his/her/its choice. By their execution of this Agreement each Party acknowledges: (a) that he/she/it understands his/her/its right to consult with independent legal counsel, (b) that he/she/it has had a reasonable opportunity to consult before signing this Agreement, (c) that he/she/it has either consulted with independent counsel before signing or freely chosen to sign without so consulting, and (d) that none of the Parties have been represented by the above attorney or law firm in an individual or adversarial capacity against the other Parties.

///

Exhibit M, Purchase Agreement ¶ 27, Dckt. 42.[3]  The signature page has Defendant-Strombom Trustee signing the Purchase Agreement as the Seller, and for the Buyer, Mis Pasadena Property, LLC, Jennifer Gassner Tracy as a "manager" and Alfred Karl Gassner as another "manager" of the Buyer.

The price for the sale of the 2,000 MEPCO shares was based on an appraisal provided by John E. Johnston.  A copy of Mr. Johnston's cover letter and appraisal to Scott G. Beattie is provided as Exhibit N, Dckt. 42.  The information provided in Mr. Johnston's letter includes:

A.      The appraisal of the 2,000 MEPCO Shares that are the TAG Trust asset has been requested by Scott G. Beattie.  1st Paragraph of Letter ("¶").

B.      The appraisal is to be for the fair market value of one share of stock as of December 15, 2015.  *Id.*

It is curious that Mr. Johnston does not appear to provide a value of 2,000 shares of MEPCO stock, which represents 1/3 of the total outstanding shares and all of the rights that go with that such ownership (which Defendant-Trust Debtors and MEPCO confirm in the related adversary proceeding carries with it the right to force the involuntary dissolution of MEPCO).

C.      Mr. Johnson qualifies his appraisal in light of valuing only one share of stock, stating, "Since one share of the common stock is a minority interest and there is not an active and liquid market for the Company's stock, the appraisal was done on a non-marketable minority basis." *Id.*

D.      Mr. Johnson further qualifies his appraisal, stating, "This valuation was done for the Company's restrict stock award plan and should not be used for any other purpose without my written consent."  2nd ¶.

It is not clear from the record whether Mr. Johnston consents to have his valuation used for

---

[3]  This is a very curious provision.  Scott G. Beattie appears to be saying that he has prepared the Purchase Agreement to memorialize "the verbal discussion of the Parties as related to him, and without representing either party in an adversarial capacity against the other party."  Further that each of the parties to the agreement were advised of their right to be represented by an independent attorney, and that by signing this that person is representing that he or she had such opportunity to seek such counsel or is proceeding without the assistance of counsel.

With this provision, Scott G. Beattie and the parties signing it appear to be stating that Defendant-Strombom Trustee, the fiduciary to the TAG Trust, negotiated the terms of the Purchase Agreement, and determined that it was proper for such trustee to enter into a contract to sell the only significant asset of the TAG Trust within 24 hours of appointment without the assistance of any counsel other than Scott G. Beattie providing her with the Purchase Agreement.

1  purposes of Defendant-Strombom Trustee using it in fulfilling her duties in selling assets of the TAG

2  Trust or to represent the value to the Superior Court of California in the State Court Petition Action.

  E.  Mr. Johnson then states that a single, non-marketable minority share had a value of $416.67. 4th ¶.

5    Plaintiff-Trustee directs the court to the appraisal which is included as part of Exhibit N,

6  which explains that the discount for a one share, minority interest was 55% of the value. Doing the

7  math and revering the discount, Mr. Johnson determined that the value for 1 share of MEPCO stock

8  would be $757.58.

9    In the State Court Petition Action, Defendant-Strombom Trustee responded to a production

10  of documents request, stating that she was not producing certain email correspondence with attorney

11  Scott G. Beattie from July 2016 based on an "Attorney/Client Communication" privilege. The claim

12  of attorney-client privilege is provided as Exhibit O, Dckt. 42. The privilege was communicated by

13  Defendant-Strombom Trustee's attorney in this Adversary Proceeding, Charles Hastings and is dated

14  November 1, 2016. The claim of attorney client privilege is stated for the following items in the

15  enclose to Mr. Hastings letter and consists of::

| DATE | DESCRIPTION | FROM/TO | BASIS OF PRIVILEGE |
|---|---|---|---|
| 07/27/2016 | Email | From Scott Beattie to Laura Strombom | Attorney/Client Communication |
| 07/27/2016 | Email | From Laura Strombom to Scott Beattie | Attorney/Client Communication |
| 07/27/2016 | Email | From Scott Beattie to Laura Strombom | Attorney/Client Communication |
| 07/28/2016 | Email | From Scott Beattie to Laura Strombom | Attorney/Client Communication |

24    Plaintiff-Georgene asserts that this further shows that Scott G. Beattie was providing legal

25  services to Defendant-Strombom Trustee and that the knowledge of Scott G. Beattie concerning the

26  TAG Trust, the Trust Assets, the Bankruptcy Case, and the assets of the Bankruptcy Estate are

27  imputed to Defendant-Strombom Trustee.). Citing *Rosenthal v. Garner*, 142 Cal.App.3d 891, 896

28  (1983); *Redman v. Walters*, 88 Cal. App.3d 448, 454 (1979).

1    Debtor objected to the Proposed sale by an email dated April 14, 2016, sent to Scott Beattie.

2  Exhibit P, Dckt. 42.  In the email, Debtor's counsel at that time communication included:

3       We disagree with your suggestion that the trustee is not responsible for the terms of
        the sale she proposed or the appraisal supporting the proposed price. Our
4       understanding is that Mepco directly or indirectly pays the fees and costs of the
        trustee, the trustee of Tom's sister's trust, the appraiser, and you as counsel for the
5       trustees and some or all of the affiliated entities and persons in this deal -including
        perhaps the purchaser Mis Pasadena Properties, LLC (which we understand is owned
6       and managed by Tom's brother and sister and suspect was created for this deal). And
        the Gassners directly or indirectly own Mepco. I can't say I know of all of these
7       details, but there appear to be various possible conflicts of interest, and we are sure
        this is not an arms-length transaction.
8

9    Defendant-Strombom Trustee being aware of the Debtor's bankruptcy case and that Debtor

10  asserted having an interest in the trust, Defendant-Strombom and attorney Scott G. Beattie

11  necessarily knew of Debtor's interest (or some part thereof) being property of the Bankruptcy Estate.

12  Defendant-Strombom Trustee's actions tor try and sell the 2,000 MEPCO shares, which by the terms

13  of the TAG Trust Agreement (until and unless reformation is ordered by a court) were required to

14  be disbursed to Debtor and the Bankruptcy Estate to the extent of the Bankruptcy Estate's interest,

15  was a violation of the automatic stay.

16
     **Violation of Stay by Filing and Prosecuting**
17  **State Court Petition Action**

18   On June 7, 2016, Defendant-Trust Settlors commenced the State Court Petition Action "to

19  strip the Debtor of his interest in the [TAG Trust]."  This was less than one month before the Debtor

20  turned 50 years of age on July 2, 2016, and the TAG Trust Agreement provided for the termination

21  of the TAG Trust and distribution of the 2,000 MEPCO shares and any other TAG Trust assets to

22  Debtor.  It is asserted in the State Court Petition that there was a scrivener's error of not making the

23  gift of the 2,000 MEPCO shares conditional on Debtor continuing his employment with MEPCO

24  until his 50th birthday.

25   The State Court Petition also sought the approval of the sale of the 2,000 MEPCO shares to

26  a buyer owned by Debtor's sister and Defendant Karl Gassner.

27   The State Court Petition Action was commenced and the termination of the Debtor's interest

28  in the TAG Trust was sought with the actual knowledge of Debtor's bankruptcy case, it being

expressly stated that Debtor's interest in the TAG Trust was not disclosed in Debtor's Bankruptcy

Case and that some portion of that interest may be an asset of that Bankruptcy Case.

Plaintiff-Georgene directs the court to Defendant-Trust Settlors Points and Authorities in the

State Court Petition Action, which includes:

> 12.    Petitioners are informed and believe and thereon allege that there is now an immediate need for the Court1s instructions to protect the Trust Property pending the outcome of this matter. For one, Petitioners are fearful as settlers, interested parties and creditors of the Trust Asset shares in their company Mepco, that Thomas Gassner will cause irreparable harm to *their* MEPCO company, in which they are still the controlling members, If he receives the shares of stock; and for two, Petitioners are concerned as newly **informed creditors of his 2010 Bankruptcy matter that the shares of stock will now, in some portion, become an asset of Thomas Gassners** prior **Chapter 7 Bankruptcy** matter because he **failed to disclose the asset** at the time of the filing. Therefore, Petitioner requested that the Court provide instructions and confer powers upon the Trustee, Laura Strombom, with regard to the 2,000 Class B Non Voting Shares, pursuant to the jurisdiction conferred by Probate Code §§ 17200(b)(1 ), (b)(6), (b)(8) and (b)(13), because really, that was the simplest solution to protecting their assets absent additional litigation.

> 13.    More specifically **Petitioners are** informed and believe and thereon allege that they have standing to bring this action because, **as** potential **creditors of Thomas Gassner's bankruptcy**, neither Petitioners nor their company MEPCO were provided timely notice of the Bankruptcy action. Petitioners are informed that **Thomas failed to disclose** both **his irrevocable beneficial interest in the** Trust as well **as other properties he co-owned with family members**, in direct violation of United State **Bankruptcy Code § 541(a)**(5)(A). Therefore, **Petitioners, as** potential **creditors**, desperately need the Court's instructions to prevent the distribution of assets to Thomas Gassner **in order to protect themselves as** the Settlers and owners of MEPCO and as now-informed **creditors of the Thomas Gassner Bankruptcy**. Absent a separate civil action, Probate Code §§ 17200 et seq is the only method the Petitioners have to getting Court instructions, and it is the most expedient and most effective method of preventing the Distribution of the Trust Property pending resolution of the matter in a manner that will  promote the most efficient judicial economy.

Exhibit Q, State Court Petition Action Points and Authorities ¶¶ 12, 13, Dckt. 42 (emphasis added).

Plaintiff-Georgene directs the court to the above to show that Defendant-Trust Settlors and

Scott G. Beattie, their attorney in commencing the State Court Petition Action, had actual knowledge

of the Bankruptcy Case and that the TAG Trust interest could be property of the Bankruptcy Estate.

Further, that Defendant-Trust Settlors and their attorney identified the Bankruptcy Code section that

makes all property of the Debtor property of the Bankruptcy Estate.  Further, the Defendant-Trust

Settlors and their attorney have identified other properties which were co-owned by Debtor when

the Bankruptcy Case was filed and not disclosed in the Bankruptcy Case, which would also be

1  property of the Bankruptcy Estate.

2  Though having knowledge of: (1) the Bankruptcy Case, (2) the failure of Debtor to disclose

3  the TAG Trust interest and other interests in properties, and (3) the Bankruptcy Code (including the

4  specific provisions pertaining to property of a bankruptcy estate, and that undisclosed property could

5  continue to be property of the Bankruptcy Estate), Defendant-Trust Settlors and their counsel

6  commenced the State Court Petition Action to get control of and purport to change ownership of the

7  property of the Bankruptcy Estate. Defendant-Trust Settlors and their counsel did not go to the

8  court, which they had identified having exclusive jurisdiction over property of a bankruptcy estate -

9  the federal bankruptcy court. 28 U.S.C. § 1334(e).

10  Interestingly, the commencement of the State Court Petition Action on June 7, 2016, and the

11  filing of these pleadings September 28, 2016, pull another thread in this developing story. Though

12  Debtor and Debtor's then counsel unequivocally were aware of the undisclosed assets, including the

13  alleged other co-owned properties, as of the June 7, 2016 commencement of the State Court Petition

14  Action, the court notes that Debtor did not file a Motion to Reopen his bankruptcy case to disclose

15  the undisclosed assets until February 1, 2017. 10-27435; Motion to Reopen, Dckt. 59. The Motion

16  to Reopen does not identify the undisclosed assets (for which the blame is placed on Debtor's former

17  bankruptcy counsel). The Amended Schedule B discloses an interest in the TAG Trust (stating that

18  the Bankruptcy Estate's interest is limited to 25%), and various claims for malpractice, violation of

19  automatic stay (which necessarily could, and are identified as, arise only post-petition and would

20  not be pre-petition assets to be listed on Schedule B), and post-petition claims for reimbursement

21  and breach of fiduciary duty against the TAG Trust trustees. *Id.*; Amended Schedule B, Dckt. 68.

22  Though aware of the sale Bankruptcy Code issues as clearly stated by Defendant-Trust

23  Settlors and their counsel that there are undisclosed assets that are property of the Bankruptcy Estate,

24  the Debtor did not seek to reopen the Bankruptcy Case for six months. One reason for the delay may

25  be demonstrated in Exhibit R filed by Plaintiff-Georgene. It is a letter from Debtor's attorney to the

26  Defendant-Strombom Trustee in which Debtor demands that all 2,000 MEPCO shares be turned over

27  to Debtor. Exhibit R, Dckt. 42. Thus, even with the knowledge of the undisclosed assets and the

28  interests of the Bankruptcy Estate, Debtor and his counsel were following the same path as

14

Defendant-Trust Settlors - trying to divert the property of the Bankruptcy Estate away from the Bankruptcy Estate into their own pockets.

Though aware of the interests of the Bankruptcy Estate in the 2,000 MEPCO share that would exist if the Debtor had a right to the shares, the Motion to Reopen the Bankruptcy Case was not filed for six months.

**Violation of the Discharge Injunction
by Commencing and Prosecuting
State Court Petition Action**

Plaintiff-Georgene asserts that the State Court Petition seeks relief based on alleged pre-petition wrongs, which would be claims against the Debtor in the Bankruptcy Case. The State Court Petition states:

> 38.    Petitioners are informed and believe and thereon allege that as a direct and proximate result of Thomas's actions, the Company has sustained substantial loss and damages such as lost profits, lost business opportunities, loss of time and resources in training replacement employees. In particular, Petitioners and their other children had to expend substantial amounts of time and resources in resolving the problems caused by Thomas's actions which would render it inequitable to reward him with a distribution of the Shares or profits from the sale thereof. The exact amount of damages and costs proximately caused by Thomas' actions is presently unknown, but will be determined in accordance with proof.

Exhibit B, State Court Petition ¶ 38, Dckt. 41.

It is therefore asserted that such a claim violates the discharge injunction for the discharge granted Debtor.[4]

**Continuing Violation of Automatic Stay**

It is further asserted that these continuing violations of the automatic stay have continued and have not been remedied since at least February 1, 2017 when the Bankruptcy Case was reopened. During the Summer of 2017 Debtor was under undergoing serious medical treatments, with Debtor suffering from anxiety, frustration, worry, stress, and financial strain due to the continuing violations of the automatic stay and the failure to distribute the TAG Trust assets. On September 29, 2017, days before Debtor passing away on October 5, 2017, a discounted settlement offer was made for

---

[4] In reviewing the Complaint, relief is not requested for violation of the discharge injunction, but for violation of the automatic stay.

one-third of the discounted single share appraised value that was only for purposes of "the Company's restricted stock award plan."

The settlement offer was made by Scott G. Beattie and transmitted to the Chapter 7 Trustee through her attorney, Russell Cunningham. Exhibit X, Dckt. 43. The letter provides a detailed discussion of the issues, identifying issues concerning the scope of the Bankruptcy Estate's interest in the 2,000 MEPCO shares, and provides risk and expense adjustments.[5]

It is asserted that the timing of making this offer, which was made to the Chapter 7 Trustee, which required a response by October 20, 2017, created further anxiety and stress for Plaintiff-Georgene.

**Violation of Stay For Requesting**
**Production of Documents in the**
**State Court Petition Action**

It is further asserted, that notwithstanding Notice of Stay because of the Bankruptcy Case filed in the State Court Petition Action on or about April 11, 2017, a Request for Production of Documents was served on Plaintiff-Georgene, as the successor/representative of the deceased Debtor on February 16, 2018. Because the discovery related to the TAG Trust assets which are property of the Bankruptcy Estate, it is asserted that this violated the automatic stay.

**Violation of the Automatic Stay As It**
**Applies to Property of the Bankruptcy Estate**

In the Bankruptcy Case, the Chapter 7 Trustee and Plaintiff-Georgina have resolved certain disputes, which resolution includes assigning claim for alleged violation of the automatic stay as it applies to the TAG Trust interest that is property of the Bankruptcy Estate. 10-27435; Order and Settlement Agreement; Dckts. 175, 164. It is now Plaintiff-Georgene who holds and has the right to assert alleged violation of the automatic stay as it relates to the Bankruptcy Estate's interest in the TAG Trust assets.

---

[5] One could "quibble" over the computation methodology which deducts the Chapter 7 bankruptcy claims and the Chapter 7 costs of administration from the value based on the one share discounted appraised value, off the top as if the settling parties will pay them, rather than the administrative expenses and claims being paid, as required by the Bankruptcy Code, out of the Bankruptcy Estate's interest in the 2,000 MEPCO shares.

16

Plaintiff-Georgene directs the court to written demands by counsel for the Chapter 7 Trustee sent to the Defendant-Trust Settlors through their attorney, Scott G. Beattie, to dismiss the State Court Petition Action and to turn over the TAG Trust assets that are property of the Bankruptcy Estate to the Chapter 7 Trustee. These demands were made by emails dated May 31, 2018, December 28, 2018, and February 28, 2019 (two emails). Exhibits EE, FF, and GG; Dckt. 36. These emails contain detailed discussions and citations of law concerning the automatic stay and property of the Bankruptcy Estate.

The December 28, 2018 Email from Russell Cunningham, counsel for the Chapter 7 Trustee, to Scott G. Beattie, addresses Proof of Claim No. 4-1 filed by MEPCO in the Bankruptcy Case. A review of the Claims Register in the Bankruptcy Case discloses that there have been two proofs of claims filed by parties represented by Scott G. Beattie.

The first is Proof of Claim No. 3-1, for which Alfred M. Gassner and Carol L. Gassner (the Defendant-Trust Settlors), as individuals and Trustees are stated to be the creditors. Proof of Claim No. 3-1 is signed under penalty of perjury by Scott G. Beattie as the creditor's attorney or authorized agent. The claim is st6ated to be of an unknown amount, but is stated under penalty of perjury being subject to a right of setoff against the 2,000 shares of MEPCO stock. The basis for the claim is stated as, "Breach of agreement, misrepresentation, unjust enrichment, conversion, and for property had and received." Attached to Proof of Claim No. 3-1 is the State Court Petition and a copy of the 2,000 shares of MEPCO stock certificate.

Proof of Claim No. 4-1 identifies MEPCO as the creditor. It is signed under penalty of perjury by Scott G. Beattie as the attorney or authorized agent for MEPCO. The amount of the claim is stated as "unknown." The basis for the claim is stated as, "Breach of fiduciary duties, interference with business/contractual relations, and salary/commissions had and rcvd."

Notwithstanding the demands to dismiss the State Court Petition Action as it applied to the Bankruptcy Estate and to turn over to the Bankruptcy Estate the TAG Trust assets that are property of the Bankruptcy Estate, no action was taken by Defendant-Trust Settlors to so do or to seek relief from the automatic stay, if appropriate.

On January 7, 2019, the Chapter 7 Trustee commenced Adversary Proceeding to enforce the

asserted rights and interests of the Bankruptcy Estate in the TAG Trust assets. This, as provided in the settlement between The Chapter 7 Trustee and Plaintiff-Georgene, includes all interests in the TAG Trust which became property of the Bankruptcy Estate upon the commencement of this case (11 U.S.C. § 362(a) and (c)(2)) and the interests of the Debtor that were subsequently assigned to the Bankruptcy Estate pursuant to the settlement (11 U.S.C. § 362(a)(7), property acquired by the bankruptcy estate after the commencement of the bankruptcy case).

On March 12, 2019, Plaintiff-Georgene commenced this Adversary Proceeding.

<u>Knowing Violation of Stay</u>

In the Bankruptcy Case, on December 11, 2019, eleven months after the Chapter 7 Trustee filed her adversary proceeding and three and one-half years after filing the State Court Petition which expressly stated knowledge of the Bankruptcy Case and possible interests of the Bankruptcy Estate in the TAG Trust, the Defendant-Trust Settlors filed a Motion for Relief From the Stay, including annulment of the stay. 10-27435; Motion, Dckt. 188. While long on argument, no legal authorities are provided concerning annulment of the stay and there is no analysis of why annulment of the stay is proper. As was clearly demonstrated by the State Court Petition, the Defendant-Trust Settlors and their counsel had knowledge of the Bankruptcy Case, knowledge of the interests of the Bankruptcy Estate (or at the very least that there could be such interests), and chose not only to file the State Court Petition Action, but to try and negotiate a "deal" with the Debtor and obtain a judgment from the State Court purporting to change the terms of the TAG Trust Agreement to state that there would be no interest on the Bankruptcy Estate in the TAG Trust and the corpus thereof, the 2,000 shares of MEPCO stock.

**OPPOSITION FILED BY DEFENDANT-STROMBOM TRUSTEE**

Defendant-Strombom Trustee begins her opposition reciting the contentions of the Defendant-Trust Settlors. Opposition, Dckt. 72. She advises the court that the Order Staying Distributions from the TAG Trust was issued pursuant to the stipulation of the Parties in the State Court Petition Action. *Id.*, p.2:27-29, 3:1-2.

Defendant-Strombom Trustee then states that "in the interim" (not identifying the "interim" period) Defendant-Strombom Trustee "initiated a sale of the [TAG Trust] assets" (which are the

subject of the ownership dispute between the Defendant-Trust Settlors and Chapter 7 Trustee (with the Bankruptcy Estate having whatever interests were part of the Bankruptcy Estate when the Debtor commenced the Bankruptcy Case in 2010 and the interests of the Debtor that were not part of the Bankruptcy Estate but acquired pursuant to the 2019 settlement between the Chapter 7 Trustee and Plaintiff-Georgene).

Defendant-Strombom Trustee states that no demand has been made on her or her legal counsel (said counsel not identified by name) to turn over any property of the Bankruptcy Estate, and that there is an order in the State Court Petition Action precluding her from making any distribution.

Defendant-Strombom Trustee then asserts that the TAG Trust Agreement limits her liability, binds the Chapter 7 Trustee (who is not a party to the TAG Trust Agreement) and controls over the provisions enacted by Congress in 11 U.S.C. § 362(a) and established law of the Ninth Circuit Court of Appeals and the United States Supreme Court.

Defendant-Strombom Trustee then argues that her defense is that it is her reading of the TAG Trust Agreement that is does not provide for the distribution of the 2,000 MEPCO shares when the Debtor turned 50 years of age. For this proposition, Defendant-Strombom Trustee provides the following quotation from the TAG Trust Agreement. "When Thomas attains age (50), the trust shall terminate and all of the assets shall be distributed to him outright and free of trust...." Defendant-Strombom Trustee does not provide the court with an explanation as how this Trust Agreement provision means that the trustee of the TAG Trust may elect to distribute "only the value" equal to all of the TAG Trust assets to the Debtor when he turns 50 years of age in lieu of the trust terminating and all of the assets themselves be distributed to the Debtor free of the trust.

Defendant-Strombom Trustee does reference the provisions of Article VII of the TAG Trust Agreement concerning the TAG Trust trustee's power to administer property of the TAG Trust. Defendant-Strombom Trustee does not offer an explanation how the grant of powers to administer property of the trust, which must be done "for the sole benefit of the beneficiary," here the Bankruptcy Estate, means that Defendant-Strombom Trustee can sell property required to be distributed to the beneficiary - especially when the beneficiary expressly objects to such sale.

19

A copy of the TAG Trust Agreement has been filed as Exhibit A by Plaintiff-Gassner. Dckt. 41. Though it is partially addressed above, with respect to the TAG Trust assets and distributions thereof, the TAG Trust Agreement provides:

> WHEREAS, it is the intention of the **Settlers** to **create an irrevocable trust** for the primary benefit of THOMAS A. GASSNER, which trust shall be known as the THOMAS A. GASSNER TRUST (hereinafter sometimes referred to as the "Trust"); and
>
> WHEREAS, for that purpose, the **Settlers make an absolute and irrevocable gift of two thousand (2,000) shares of** the class "B" non-voting **common stock of MEPCO** LABEL SYSTEMS, A CALIFORNIA CORPORATION.
>
> NOW, THEREFORE, in consideration of the premises and by the Settlers' execution of this Agreement, the Settlers declare and establish the Trust, to be held by the Trustee in trust for the purposes and subject to all the terms, conditions and provisions of this Agreement; by the Trustee's execution of this Agreement, **the Trustee acknowledges receipt from the Settlors of the gift and agree to hold and administer it**, together with any other property of any kind which the Trustee may at any time hereafter receive from the Settlers, for the uses and purposes and **subject to all of the terms, conditions and provisions of this Agreement**.

*Id.* p. 1 (emphasis added). These provisions state that an irrevocable trust has been created, it is for the benefit of Debtor, that Defendant-Trust Settlors make an absolute and irrevocable gift of 2,000 MEPCO shares, and that the then current trustee, George V. Hartmann, acknowledged receipt of the 2,000 MEPCO shares as of his December 30, 1992 execution of the TAG Trust Agreement.

ARTICLE II
Identity of Beneficiary

2.1    Beneficiaries. The sole beneficiary of the trust shall be THOMAS A. GASSNER ("Thomas").

*Id.* The TAG Trust Agreement expressly identifies Debtor as the sole beneficiary of the TAG Trust.

ARTICLE III

3.1.    Distributions of Income and Principal. Until Thomas attains age fifty (50), the Trustee is authorized to distribute all the net income to Thomas in monthly or other convenient installments (but in no case less than once each calendar year) together with so much of the principal of the Trust as the Trustee deems to be necessary for Thomas' health, education, support and maintenance.

*Id.*

3.2    Distribution of Trust. When Thomas attains age fifty (50), **the trust shall terminate** and **all of the assets shall be distributed to him** outright and **free of trust**. In the event Thomas dies prior to attaining age fifty (50), then the trust shall be distributed to Thomas' then living issue, if any, and if none, then to the living

1   issue of Settlors; provided, however, that any Subchapter S stock then held by the
    Trustee shall be distributed to only one living child of Thomas (or of the Settlors if
2   Thomas is not survived by living issue) and the other children shall be compensated
    through allocation or equalization by the issuance of appropriate debt instruments.
3

4   *Id.*

5           This appears to be the provision that Defendant-Strombom Trustee is referencing in which

6   she states (as paraphrased by the court), "Well, it does not expressly say that 'all assets' of the TAG

7   Trust includes the 2,000 MEPCO shares" which are undisputedly assets of the TAG Trust.

8   Defendant-Strombom Trustee offers no credible basis for stating that the words "all assets" do not

9   include "all assets of the TAG Trust."

10          Defendant-Strombom Trustee then argues that notwithstanding the language that upon

11  Debtor reaching the age of 59 years that the TAG Trust **shall terminate** and that Defendant-

12  Strombom Trustee **shall distribute** all of the TAG Trust assets to **Debtor outright and free of the**

13  **trust** means that Defendant-Strombom Trustee, in fulfilling her fiduciary duties as the trustee of the

14  TAG Trust, does not have to distribute the trust assets free of the trust to the sole beneficiary, the

15  Debtor.  Defendant-Strombom Trustee agrees that she can elect to sell the trust assets, rather than

16  disburse them free of the trust for what she thinks they are worth and merely **pay the beneficiary**

17  **of the TAG Trust the value of the Trust that is not property of the Bankruptcy Estate and the**

18  **remaining value to the Bankruptcy Trustee**.  Opposition, p. 4:22-25.  Defendant-Strombom

19  Trustee offers no terms of the TAG Trust Agreement, applicable law, or credible argument why the

20  mandate to distribute the assets gives Defendant-Strombom Trustee the authority to substitute what

21  Defendant-Strombom Trustee concludes is the value to both the Debtor and Bankruptcy Estate.

22          The Notice of Proposed Action "issued by" Defendant-Strombom Trustee within 24 hours

23  of her appointment as successor trustee of the TAG Trust on January 27, 2016.  Debtor turned

24  age 50 on July 2, 2016.  While Defendant-Strombom Trustee had, based on the language of the TAG

25  Trust Agreement to administer property of the TAG Trust, that power was subject to the automatic

26  termination provisions of the TAG Trust Agreement and the mandatory obligation of the TAG Trust

27  trustee to distribute the assets upon Debtor turning 50 years old.  Defendant-Strombom Trustee

28  provides no basis for ignoring those mandatory provisions.

1    While Defendant-Strombom Trustee may not have violated the automatic stay when she

2    entered into the contract, such contract was subject to the limitations of her powers upon Debtor

3    reaching the age of 50.

4    Defendant-Strombom Trustee then argues that the Bankruptcy Estate could only have an

5    interest in 25% of the TAG Trust and that was limited to merely an interest in the "income," not the

6    corpus.  As this court has address in the ruling in the related Adversary Proceeding between the

7    Chapter 7 Trustee, MEPCO, and the Defendant-Trust Settlors, it is now well settled that upon

8    commencement of the Bankruptcy Case, the Bankruptcy Estate acquired 25% of the Debtor's

9    interest in the TAG Trust.  That included the contingent interest to 25% of the distribution of all the

10   TAG Trust assets upon Debtor obtaining the age of 50 years.

11   Though the automatic stay may have terminated as to the Debtor with his discharge

12   (discussed below), the automatic stay remained in full force and effect for the Bankruptcy Estate's

13   interest in the trust from the 2010 commencement of the Bankruptcy Case and continuing today, as

14   well as applying to all of the Debtor's interest in the TAG Trust obtained by assignment from

15   Plaintiff-Georgene.

16   With respect to the damages, which will be addressed at a later date, Defendant-Strombom

17   Trustee argues that Plaintiff-Georgene cannot assert claims for emotional distress because she is not

18   the Debtor.  To the extent that a non-debtor would be attempting to claim damages for violation of

19   an automatic stay that does not protect that non-debtor, Defendant-Strombom Trustee would be

20   correct.  However, the court reads the Complaint to seek recovery of the Debtor's emotional distress

21   damages.

22   The more significant argument, which has not been made but the court identifies as a matter

23   of law,[6] is that the automatic stay terminated as to the Debtor upon his discharge being granted.

24   11 U.S.C. § 362(c)(2)(C).  Debtor's discharge was entered on July 12, 2010.  10-27435; Discharge

25

26

27   [6] *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 130 S. Ct. 1367, 1381 n.14, 176
     L. Ed. 2d 158, 173 n.14 (2010); *see also Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.)*,
     293 B.R. 489, 499 (B.A.P. 9th Cir. 2003) (citing *Everett v. Perez (In re Perez)*, 30 F.3d 1209, 1213 (9th
28   Cir. 1994)).

Order, Dckt. 31.

However, the automatic stay does not terminate as to property of the Bankruptcy Estate unless relief is granted pursuant to 11 U.S.C. § 362(d) or it is no longer property of the bankruptcy estate, 11 U.S.C. § 362(c)(1).

## OPPOSITION OF DEFENDANT-TRUST SETTLORS

The Defendant-Trust Settlors begin with the contention that no interest in the TAG Trust can be property of the Bankruptcy Estate because the TAG Trust is a spendthrift trust, citing 11 U.S.C. § 541(c)(2). As this court has addressed in the Related Adversary Proceeding and incorporates herein, the California Supreme Court has now clearly determined that the interests of a judgment debtor in a spendthrift are subject to enforcement of such judgment up to 25% of the judgment debtor's interest. The cases establishing this principle include: *Carmack v. Frealy*, 2 Cal.5th 844 (2017); *Frealy v. Reynolds (In re Reynolds)*, 867 F.3d 1119, 1120 (9th Cir. 2017); and *In re Neuton*, 922 F.2d 1379, 1381 (9th Cir. 1990).

Defendant-Trust Settlors then correctly identify that Plaintiff-Georgene may not assert personal claims for violation of the automatic stay since she is not the debtor and is not subject to the automatic stay. However, Plaintiff-Georgene is prosecuting claims of the Debtor, as the successor of the Debtor, and the Bankruptcy Estate, as the assignee of those rights from the Bankruptcy Estate.

Defendant-Trust Settlors then assert that the State Court Petition Action is not one in which the Defendant-Trust Settlors seek to enforce a pre-petition obligation, but "merely" reform the TAG Trust Agreement. Plaintiff-Georgene directs the court to monetary amounts being sought pursuant to the State Court Petition for conduct of the Debtor. It appears that this is for both pre and post Bankruptcy Case commencement events. See Paragraphs 16, 17, 19, 20, 24, and 38 of the State Court Petition:

> 16.   Petitioners are informed and believe that during the 2000s Thomas had begun speculating in real estate investing and began buying and selling houses ("House Flipping"). Petitioners are informed that by 2004 Thomas' real estate investment activities had increased and Thomas focused more and more time and attention on his speculative personal real estate investments. As a result of his House Flipping activities, Thomas' work ethic and devotion of time and effort to MEPCO suffered greatly. Petitioners are informed and believe that Thomas unilaterally and

of his own accord cut his working hours at MEPCO and began spending more and more time pursuing these House Flipping activities rather than devoting his time and attention as needed to properly manage MEPCO as he had agreed to do.

17. Petitioner's are informed that at the height of Thomas's real estate investing activities occurred around 2005-2007 Thomas began threatening that he would leave the Company unless he received an ownership interest in MEPCO. As explained herein, Petitioners, through estate planning mechanisms, attempted to satisfy Thomas' demands by orally agreeing to provide for succession of a controlling interest in the Company to Thomas under both their Living Trust and the Thomas Gassner Trust on the understanding he would remain an active, full time employee in good standing with the Company. Thomas ultimately failed to uphold his end of this bargain.

19. Despite Petitioner's efforts, Thomas' devotion to the Family Business continued to wane. Eventually, at the height of the real estate boom through the crash into 2009, Thomas was devoting half his day or more each business day to his personal House Flipping activities, essentially ignoring his obligations to MEPCO, its shareholders, employees and other Interested Persons who were relying on him to fulfill his obligations to the Family Business.

20. From approximately 2008 to 2010, Thomas unilaterally and without Petitioners' approval increased the amount of time he spent in outside sales while Jennifer (and her husband, Philip Tracy), more and more took over management of production and the business facilities. On or around the year 2009, in recognition of Jennifer's increasing role in management and Thomas' inability to fulfill the duties of his position, Petitioners (as Voting Shareholders and Directors) made Jennifer and Thomas Co-Presidents.

24. Currently, Petitioners are retired from day to day operations (i.e., they are active on the Board of Directors). Petitioners continue to own three thousand (3,000) Class A Voting Shares of MEPCO and their children, Jennifer Gassner Tracy and A. Karl Gassner, with the assistance of strong personnel, continue to successfully run the family business for the benefit of MEPCO and its Employees and Customers. However, Petitioners are informed and believe it took several years to fully undo the damage Thomas caused with his sudden departure in June 2010 and subsequent attempt to steal business from the Company.

38. Petitioners are informed and believe and thereon allege that as a direct and proximate result of Thomas's actions, the Company has sustained substantial loss and damages such as lost profits, lost business opportunities, loss of time and resources in training replacement employees. In particular, Petitioners and their other children had to expend substantial amounts of time and resources in resolving the problems caused by Thomas's actions which would render it inequitable to reward him with a distribution of the Shares or profits from the sale thereof. The exact amount of damages and costs proximately caused by Thomas' actions is presently unknown, but will be determined in accordance with proof.

Exhibit B, State Court Petition; Dckt. 41. It is not clear whether this is for pre or post-petition events.

More significantly, at the time the State Court Petition Action was commenced, the automatic stay had been terminated, replaced by the discharge injunction arising under 11 U.S.C.

1 § 524(a)(2) and (3).

2      Defendant-Trust Settlors are correct to the extent that they argue that the did not violate the

3 "automatic stay" as it applied to the Debtor.

4      Defendant-Trust Settlors are not correct to the extent they argue that they did not violate the

5 automatic stay as it applied to property of the Bankruptcy Estate, which includes 25% of the

6 Debtor's interest in the TAG Trust (which the Defendant-Debtor disputes based on the assertion that

7 the TAG Trust Agreement can be reformed due to a correct a drafting error; *Radin v. Jewish*

8 *National Fund et al.*, 61 Cal. 4th 871 (2015), overturning prior law not allowing for reformation of

9 an irrevocable trust).

10

**Defendant-Trust Settlor's Assertion That**
11 **Debtor's Post-Petition Conduct and Interests**
**in the TAG Trust Are Not Protected**
12 **By Automatic Stay**

13      Defendant-Trust Settlors identify the legal principal that the automatic stay does not apply

14 with respect to post bankruptcy case filing conduct of a Chapter 7 debtor. Defendant-Trust Settlors

15 assert that any action taken was based on Debtor's post-bankruptcy filing conduct.

16      Defendant-Trust Settlors then assert that since the TAG Trust is a spendthrift trust, then the

17 Bankruptcy Estate could not have obtained any of the Debtor's interests. While arguing such, it is

18 contrary to the express holdings of the California Supreme Court and the Ninth Circuit Court of

19 Appeals cited above. As explained in the ruling in the Related Adversary Proceeding incorporated

20 herein, upon the filing of the Bankruptcy Case, 25% of the Debtor's interest in the TAG Trust

21 became and continues to be property of the Bankruptcy Estate. Those interests include the

22 contingent right to distribution of 25% of the TAG Trust assets upon Debtor reaching the age of 50

23 years.

24      The automatic stay was and is in full force and effect for at least that 25% interest in the

25 TAG Trust (if a spendthrift trust) and all of the interests of the Debtor in the TAG Trust obtained

26 by assignment from Plaintiff-Georgene, 11 U.S.C. § 362(a)(3) and § 541(a)(1), (a)(7).

27 ///

28 ///

**Defendant-Trust Settlors' Assertion That The State Court Petition Action
To Change the Terms of the TAG Trust or Sell TAG Trust Assets
Rather than Distribute Them as Provided in the TAG Trust Agreement
Cannot Violate  the Automatic Stay**

Defendant-Trust Settlors assert since there has been no clear and convincing evidence that the automatic stay has been violated they are entitled to summary judgment.  Defendant-Trust Settlors then profess great confusion (as they did in connection with the Chapter 7 Trustee's Motion to Approve the Settlement with Plaintiff-Georgene) as to whose automatic stay rights are being asserted.  Here, Defendant-Trust Settlors assertion stands on some ground, in that the Complaint appears to assert stay violations of the automatic stay as it applied to the Debtor and the Plaintiff-Georgene, as the spouse of Debtor.  The automatic stay applied to, and if violated, was violated as to the rights of the Debtor.  Plaintiff-Georgene can and is seeking to assert such claims of the now deceased Debtor as his successor.

Defendant-Trust Settlors correct cite to 11 U.S.C. § 362(c)(2)(C) for the automatic stay having terminated by operation of law as to the Debtor upon the July 12, 2010 entry of his discharge. Plaintiff-Georgene has not identified what conduct violated the automatic stay as to the Debtor.

However, for the Bankruptcy Estate, the automatic stay has been and continues in full force and effect for its interests in the TAG Trust - since the March 25, 2010 filing of the Bankruptcy Case for the Bankruptcy Estate's 25% interest and since the October 1, 2019 approval of the Settlement and transfer for the Debtor's 75% interest that is now property of the Bankruptcy Estate.

Through the State Court Petition Action the Defendant-Trust Settlors have, since commencing that Action on June 7, 2015, have worked to change, terminate, control, transfer, and keep from the Bankruptcy Estate the interests of the Bankruptcy Estate in the TAG Trust. Defendant-Trust Settlors have been aware of such potential interest from the time of filing the State Court Petition.

Defendant-Trust Settlors cite to the state court decision in *Leonardini v. Wells Fargo Bank & Union Trust Co.*, 131 Cal. App. 2d 9 (1955), that Debtor had no right to the corpus of the TAG Trust when the case was filed, so therefore the Bankruptcy Estate could not have any interest in the TAG Trust corpus or the distribution thereof when Debtor turned 50 years of age.

First, *Leonardini* was based on the laws dealing with enforcement against interests of a spendthrift beneficiary in 1955, not the laws as applied by the California Supreme Court in *Carmack v. Frealy*, 2 Cal.5th 844 (2017); and applied by the Ninth Circuit Court of Appeals in *Frealy v. Reynolds (In re Reynolds)*, 867 F.3d 1119, 1120 (9th Cir. 2017); and *In re Neuton*, 922 F.2d 1379, 1381 (9th Cir. 1990). To quote the California Supreme Court in *Carmack*:

> The Ninth Circuit asked us whether the Probate Code limits a bankruptcy estate's access to a spendthrift trust to 25 percent of the beneficiary's interest, where the trust pays the beneficiary entirely out of principal. We hold that the Probate Code does not impose such an absolute limit on a general creditor's access to the trust. With limited exceptions for distributions explicitly intended or actually required for the beneficiary's support, **a general creditor may reach a sum up to the full amount of any distributions that are currently due and payable** to the beneficiary even though they are still in the trustee's hands, and separately may reach a sum up to **25 percent of any payments that are anticipated to be made to the beneficiary**.

*Carmack v. Frealy*, 2 Cal.5th 844, 847 (2017) (emphasis added). The California Supreme Court continued, wrapping up the *Carmack* Decision stating:

> In sum, after an amount of principal has become due and payable (but has not yet been distributed), a creditor can petition to have the trustee pay directly to the creditor a sum up to the full amount of that distribution (§ 15301) unless the trust instrument specifies that the distribution is for the beneficiary's support or education and the beneficiary needs the distribution for those purposes (§ 15302). **If no such distribution is pending** or if the *857 distribution is not adequate to satisfy a judgment, **a general creditor can petition to levy up to 25 percent of the payments expected to be made to the beneficiary**, reduced by the amount other creditors have already obtained and subject to the support needs of the beneficiary and any dependents. (§ 15306.5.)
>
> Conclusion
>
> We conclude that **a bankruptcy trustee**, standing as a hypothetical judgment creditor, **can reach a beneficiary's interest in a [spendthrift] trust** that pays entirely out of principal in two ways. It may reach **up to the full amount of any distributions of principal that are currently due and payable to the beneficiary**, unless the trust instrument specifies that those distributions are for the beneficiary's support or education and the beneficiary needs those distributions for either purpose. **Separately,** the **bankruptcy trustee can reach up to 25 percent of any anticipated payments made to, or for the benefit of, the beneficiary,** reduced to the extent necessary by the support needs of the beneficiary and any dependents.

*Id.* at 856-857. The Ninth Circuit Court of Appeals in *Frealy v. Reynolds, et al.*, 867 F.3d 1119, 1120 (9th Cir. 2017) (emphasis added), applying the application of spendthrift trust law as established by the California Supreme Court in *Carmack*, state that for a bankruptcy estate:

> In our order certifying the question, we recounted the facts of this case. *Id.* at

27

1031–32. Based on the California Supreme Court opinion, we now hold that a **bankruptcy estate is entitled to the full amount of spendthrift trust distributions due to be paid as of the petition date**. *See Carmack v. Reynolds*, 2 Cal.5th 844, 215 Cal.Rptr.3d 749, 391 P.3d 625, 628 (2017); Cal. Prob. Code § 15301(b). But the estate may not access any portion of that money the beneficiary needs for his support or education, as long as the trust instrument specifies that the funds are for that purpose. *See Carmack*, 215 Cal.Rptr.3d 749, 391 P.3d at 629; Cal. Prob. Code § 15302. **The estate may also reach 25 percent of expected future payments from the spendthrift trust**, reduced by the amount the beneficiary needs to support himself and his dependents. *See Carmack*, 215 Cal.Rptr.3d 749, 391 P.3d at 632; Cal. Prob. Code § 15306.5.

A necessary party to the State Court Petition Action to reform the TAG Trust Agreement is the Chapter 7 Trustee for Debtor's Bankruptcy Case. Defendant-Trust Settlors could not alter, change, or have adjudicated the Bankruptcy Estate's interest in the TAG Trust through the Debtor as a proxy. Though aware of the Bankruptcy Case and there being undisclosed assets, including the TAG Trust interest of Debtor that were property of the Bankruptcy Estate. The Defendant-Trust Settlors have attempted to proceed in the State Court Petition Action against the Bankruptcy Estate's interests.

Further, based on the Settlement with Plaintiff-Georgene, the Chapter 7 Trustee now holds 100% of the Debtor's interest in the TAG Trust and is the one person in the world that Defendant-Trust Settlers must now have a determination of what is property of the Bankruptcy Estate.

**Assertion that the Federal Court Does**
**Not Have Authority to Determine the**
**Bankruptcy Estate's interest in the TAG Trust**

Defendant-Trust Settlors argue that the federal courts do not have jurisdiction based upon 28 U.S.C. § 1324, to determine the effect of the TAG Trust Agreement Defendant-Trust Settlors' assertion that it must be reformed to correct a drafting error, and the interests of the TAG Trust and TAG Trust Assets that are property of the Bankruptcy Estate.

Defendant-Trust Settlors direct the court to *Stern v. Marshall*, 547 U.S. 293 (2006) for the proposition that federal court jurisdiction is "limited" and that matters with the work "probate" associated with them if they are "purely state law matters of probate." Defendant-Trust Settlors conclude that since there is a matter of state "probate law," this court "lacks jurisdiction" to determine the uniquely federal claims arising from an alleged violation of the stay.

Going to *Stern v. Marshall*, the U.S. Supreme Court found that the federal district court

1    properly exercised jurisdiction pursuant to 28 U.S.C. § 1334 to adjudicate a dispute between a debtor

2    widow's counter claim that she alleged the son of the widow's deceased husband tortiously

3    interfered with a gift that the debtor widow asserted that her deceased husband was to give her on

4    his death. The Supreme Court begins with the admonition, quoting Chief Justice Marshall that,

> "It is most true that this Court will not take jurisdiction if it should not: but it is equally true, that it must take jurisdiction if it should. . . . We have no more right to decline the exercise of jurisdiction which is given, than to] usurp that which is not given." 19 U.S. 264, 6 Wheat. 264, 404, 5 L. Ed. 257 (1821). Among longstanding limitations on federal jurisdiction otherwise properly exercised are the so-called "domestic relations" and "probate" exceptions. Neither is compelled by the text of the Constitution or federal statute. Both are judicially created doctrines stemming in large measure from misty understandings of English legal history.

10   *Stern v. Marshall*, 547 U.S. 293, 298-99 (2006).

11       The Supreme Court then discussed how some federal courts "have lost sight of his [Chief

12   Justice Marshall's] admonition and have rendered decisions expansively interpreting these two

13   [domestic relations and probate] exceptions" for when a federal court elects to not exercise federal

14   jurisdiction. *Id.* at 299. The Supreme Court then cites to its decision in *Ankenbrandt v. Richards*,

15   504 U.S. 689 (1992), in reigning in the domestic relations exception and *Markham v. Allen*, 326 U.S.

16   490 (1946) in reigning in the probate exception.

17       Going to *Markham v. Allen*, 326 U.S. 490 (1946), the Supreme Court was addressing a

18   dispute between the Alien Property Custodian and the executor and resident heirs of the decedent.

19   The Custodian asserted a right to share in the estate of the deceased which was being probated in

20   state court. The heirs commenced an action in state court, asserting their respective rights as proper

21   beneficiaries. The Custodian then sought an order in federal court that he was entered to the estate

22   based on his vesting order. The district court agreed it had jurisdiction and adjudicated the

23   competing claims, and that the Custodian was entitled to the property of the decedent.

24       The Ninth Circuit Court of Appeals reversed, believing that "since 'the matter is within

25   probate jurisdiction and the [state] court is in possession of the property, its right to proceed to

26   determine heirship cannot be interfered with by a federal court.' " *Id.* at 493.

27       Recognizing that federal court jurisdiction is not granted by Congress to probate a will or

28   administer an estate, citing the Judiciary Act of 1789, the Supreme Court stated:

But it has been established by a long series of decisions of this Court that federal courts of equity have jurisdiction to entertain suits "in favor of creditors, legatees and heirs" and other claimants against a decedent's estate "to establish their claims" so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court. *Waterman v. Canal-Louisiana Bank Co.*, 215 U.S. 33, 43, and cases cited. *See Sutton v. English, supra*, 205; *United States v. Bank of New York Co.*, 296 U.S. 463, 477; *Commonwealth Trust Co. v. Bradford*, 297 U.S. 613, 619; *United States v. Klein*, 303 U.S. 276; *Princess Lida v. Thompson*, 305 U.S. 456, 466.

*Id.* at 494.

At this juncture, it must be noted that federal court jurisdiction is being exercised with respect to property of a bankruptcy estate as provided in 28 U.S.C. § 1334 which grants broad, unique federal court jurisdiction, including exclusive federal court jurisdiction (which the federal court may elect to voluntary abstain) over property of the bankruptcy estate.

The Supreme Court continues, stating that while a federal court is not to exercise jurisdiction to affect the possession of property in custody of a state court,

it [federal court] may  exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court. *Commonwealth Trust Co. v. Bradford, supra*, 619; United States v. Klein, supra, 281 and cases cited.

*Id.*  As the Defendant-Strombom Trustee, it is she, the trustee of the TAG Trust, who is in possession of the 2,000 MEPCO shares of stock.

In *Markham v. Allen* the Supreme Court could properly order to whom the net estate was to be paid after the executor's administration of the probate estate, concluding:

The effect of the judgment was to leave undisturbed the orderly administration of decedent's estate in the state probate court and to decree petitioner's right in the property to be distributed after its administration.  This, as our authorities demonstrate, is not an exercise of probate jurisdiction or an interference with property in the possession or custody of a state court.

*Id.* at 495.

Again, as is clear from the numerous exhibits provided by all the parties and extensive pleadings, there is no estate being probated, there is nothing being administered by an executor or any other person in the state court.  Rather, there is a dispute as to the effect of a written document - the TAG Trust Agreement.  In effect, it is little more than a contract dispute, with the parties arguing over what the language of the TAG Trust Agreement means, and Defendant-Trust Settlors asserting

that they have the right to have the language reformed (similar to a business contract dispute based upon asserted agreements outside the four corners of the TAG Trust Agreement).

The Supreme Court expressly stated that "merely" because the federal court is interpreting and applying state law is not a basis for a federal judge refusing to exercise federal jurisdiction. *Id.* As those experienced in bankruptcy court proceedings well know, much, if not most, of the matters litigated in the bankruptcy court concern matters of state law.

The Supreme Court found that the propriety of a federal judge exercising federal court jurisdiction for a matter that concerned state law was heightened when it was being done as part of a federally created statutory scheme, which for in *Markham v. Allen* was the federal Trading With the Enemy (50 U.S.C. §§ 4301 et seq.). *Id.*

In the present case, the federal statutory scheme is the Bankruptcy Code and the federal law creating the bankruptcy estate, which must be administered by the Chapter 7 trustee.

In *Stern v. Marshall*, the Supreme Court concluded that the Ninth Circuit Court of Appeals was in error in excluding from federal court jurisdiction determining the validity of the decedent's estate planning instrument. *Stern v. Marshall*, 547 U.S. at 299. In reversing the Circuit Court decision, the Supreme Court bluntly stated:

> The Court of Appeals further held that a State's vesting of exclusive jurisdiction over probate matters in a special court strips federal courts of jurisdiction to entertain any "probate related matter," including claims respecting "tax liability, debt, gift, [or] tort." Id., at 1136. We hold that the Ninth Circuit had no warrant from Congress, [*300] or from decisions of this Court, for its sweeping extension of the probate exception.

*Id.* at 299.

In describing the proper exercise of federal court jurisdiction in connection with a bankruptcy case by the trial court, the Supreme Court states:

> [t]he District Court determined that Pierce had tortiously interfered with Vickie's expectancy. Specifically, the District Court found that J. Howard directed his lawyers to prepare an *inter vivos* trust for Vickie consisting of half the appreciation of his assets from the date of their marriage. See 275 B. R., at 25-30, 51-53. It further found that Pierce conspired to suppress or destroy the trust instrument and to strip J. Howard of his assets by backdating, altering, and otherwise falsifying documents, arranging for surveillance of J. Howard and Vickie, and presenting documents to J. Howard under false pretenses. *Seeid*., at 36-50, 57-58; see also 253 B. R., at 554-556, 559-560. Based on these findings, the District Court awarded

1    Vickie some $44.3 million in compensatory damages. 275 B. R., at 53-57. In
2    addition, finding "overwhelming" evidence of Pierce's "willfulness, maliciousness,
     and fraud," the District Court awarded an equal amount in punitive damages. *Id.*, at
3    57-58.
     . . .
4        As the Court of Appeals correctly observed, Vickie's claim does not "involve
     the administration of an estate, the probate of a will, or any other purely probate
5    matter." 392 F.3d at 1133. Provoked by Pierce's claim in the bankruptcy
     proceedings, Vickie's claim, like Carol Ankenbrandt's, alleges a widely recognized
6    tort. *See King v. Acker*, 725 S.W.2d 750, 754 (Tex. App. 1987); 4 Restatement
     (Second) of Torts § 774B (1977) HN9[] ("One who by fraud, duress or other tortious
7    means intentionally prevents another from receiving from a third person an
     inheritance or gift that [s]he would otherwise have received is subject to liability to
8    the other for loss of the inheritance or gift."). Vickie seeks an in personam judgment
     against Pierce, not the probate or annulment of a will. *Cf.Sutton*, 246 U.S., at 208,
9    38 S. Ct. 254, 62 L. Ed. 664 (suit to annul a will found "supplemental to the
     proceedings for probate of the will" and therefore not cognizable in federal court).
10   Nor does she seek to reach a res in the custody of a state court. *See Markham*, 326
     U.S., at 494, 66 S. Ct. 296, 90 L. Ed. 256.

11       Furthermore, no "sound policy considerations" militate in favor of extending
     the probate exception to cover the case at hand. Cf. *Ankenbrandt*, 504 U.S., at 703,
12   112 S. Ct. 2206, 119 L. Ed. 2d 468. Trial courts, both federal [**1749] and state,
     often address conduct of the kind Vickie alleges. State probate courts possess no
13   "special proficiency . . . in handling [such] issues." Cf. *Id.*, at 704, 112 S. Ct. 2206,
     119 L. Ed. 2d 468.

14

15   *Id.* at 304,312.

16       The Defendant-Trust Settlors make similar contentions that the written TAG Trust

17   Agreement should be reformed because it does not accurate state what was intended, that there were

18   representations and misrepresentations made, and that Debtor engaged in tortious conduct.

19   Additionally, this conduct is stated as the basis for the monetary obligation asserted to be owed to

20   Defendant-Trust Settlors in Proof of Claim 3-1 that Defendant-Trust Settlors have filed in the

21   Debtor's Chapter 7 case. Determination of that claim, which asserts an offset right against the 2,000

22   MEPCO shares, necessarily requires a determination of whether the TAG Trust Agreement means

23   what it says, or whether Defendant-Trust Settlors have the right to reform it to the alleged

24   representations, misrepresentations, and tortious conduct of Debtor.

25                                    **DECISION**

26       Adjudication of whether the automatic stay has been violated by the Defendant-Trust Settlors

27   or Defendant-Strombom Trustee is dependent on a determination of a key issue - what rights and

28   interests did or does the Debtor and the Bankruptcy Estate have in the TAG Trust and what rights

                                           32

1 they had to the distribution of their respective interests, if any, in the 2,000 MEPCO shares and other

2 trust assets when Debtor turned 50 years of age.

3 　　　　Congress provides for exclusive federal court jurisdiction for property of the bankruptcy

4 estate. 28 U.S.C. § 1334(e). For all civil proceedings arising under Title 11 (the Bankruptcy Code),

5 or arising in or related to cases under Title 11 (bankruptcy cases), the federal courts have original,

6 but not exclusive, jurisdiction. 28 U.S.C. § 1334(b).

7 　　　　Except for Chapter 15 cases (11 U.S.C. § 1501 et seq., international cross boarder bankruptcy

8 proceedings), the federal court may chose to abstain, as provided in 28 U.S.C. § 1334(c)(1).

9 　　　　In 28 U.S.C. § 1334(d), Congress provides that notwithstanding the provisions allowing for

10 the federal court to abstain, such provisions and abstention "shall not be constructed to limit the

11 applicability of the stay provided for by section 362 of title 11, United States Code, as such section

12 applies to an action affecting the property of the estate in bankruptcy.

13 　　　　Thus, by timely motion (not merely part of an opposition) by any party who believes that

14 proper grounds exist, the party may request that this court abstain from adjudicating the

15 determination of whether and what trust interests of the Debtor became property of the Bankruptcy

16 Estate as provided in 11 U.S.C. § 541.

17 　　　　While adjudication of whether the automatic stay has been violated is dependent on a

18 determination of what the rights and interests of the Bankruptcy Estate and Debtor are, adjudication

19 of a violation of the automatic stay is a core proceeding which is a unique federal law issue which

20 should be determined in the federal court. Also, the automatic stay has been in full force and effect

21 for any such property of the Bankruptcy Estate and interests of the Bankruptcy Estate, including any

22 attempts to obtain any adjudication to make it appear that there are no interests of the Bankruptcy

23 Estate (to the extent any exist). This was all done by Defendant-Trust Settlors and their counsel with

24 full knowledge of the Bankruptcy Case, that Debtor's interest in the TAG Trust had not been

25 disclosed, and that the Bankruptcy Estate could have an interest in the TAG Trust that would have

26 to be adjudicated for the State Court Petition Action to have any effect on the interests of the

27 Bankruptcy Estate. Notwithstanding this knowledge did Defendant-Trust Settlors and their counsel

28 actively prosecute the State Court Action, but they also negotiated with the Debtor for a settlement

1 to obtain a judgment in the State Court Petition Action or amendment of the TAG Trust Agreement

2 to make it appear that there could be no possible interest of the Bankruptcy Estate, which acts are

3 in violation of federal law.  As has been clearly established, acts taken in violation of the automatic

4 stay are void, not merely voidable.  *40235 Washington Street Corporation v. Lusardi (In re Lusardi)*,

5 329 F.3d 1076 (9th Cir. 2003); *Far Out Productions, Inc. v. Oskar et al.*, 247 F.3d 986, 995 (9th Cir.

6 2001);  *Schwartz v. United States of America (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992)

7   Seeking annulment of the automatic stay (retroactive relief to "unvoid" a void act) is

8 provided for in the Bankruptcy Code as part of the relief available under 11 U.S.C. § 362(d).  The

9 grounds for such annulment have been clearly addressed by the Ninth Circuit of Appeals.  *Nat'l*

10 *Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.)*, 129 F.3d 1052, 1054 (9th

11 Cir. 1997); *Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 24-25 (B.A.P. 9th Cir. 2003).

12   Adjudication of whether there has been a violation of the discharge injunction is also a core

13 proceeding, in the nature of contempt, which is to be adjudicated in the federal court.

14   The Motion for Summary Judgment is denied without prejudice, the court (or a court) having

15 to determine what interests the Debtor and the Bankruptcy Estate had and have, if any, is a necessary

16 condition precedent for adjudicating whether the automatic stay was violated.

17   With respect to the alleged violation of the Discharge Injunction, the court has not been

18 presented with evidence of such violation that is not in material dispute.

19 **Dated:** January 22, 2020    **By the Court**

20

21

22

23 **Ronald H. Sargis, Judge**

24 **United States Bankruptcy Court**

25

26

27

28

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

| Debtor(s) | Attorney(s) for the Debtor(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| J. Russell Cunningham, Esq.<br>1830 15th Street<br>Sacramento, CA 95811 | Holly A. Estioko, Esq.<br>500 Capitol Mall, Ste. 2250<br>Sacramento, CA 95814 |
| Scott G. Beattie, Esq.<br>3443 Deer Park Drive, #A<br>Stockton, CA 95219 | Charles L. Hastings, Esq.<br>4568 Feather River Drive, #A<br>Stockton, CA 95219 |